558 So.2d 404 (1990)
OBS Company, Inc., Petitioner,
v.
Pace Construction Corporation, et al., Respondents.
No. 73296.
Supreme Court of Florida.
February 15, 1990.
Rehearing Denied April 23, 1990.
Donald D. Clark, David E. Gurley, Joel W. Walters and Anthony J. Abate of Abel, Band, Brown, Russell & Collier, Chartered, Sarasota, for petitioner.
J.M. Crowder of Crowder & O'Friel, Tampa, J.D. Humphries, III of Varner, Stephens, Wingfield, McIntyre & Humphries, Atlanta, Ga., for respondents.
McDONALD, Justice.
We review Pace Construction Corp. v. OBS Co., 531 So.2d 737 (Fla. 2d DCA 1988), based on express and direct conflict with Cohen v. Lunsford, 362 So.2d 383 (Fla. 1st DCA 1978). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Pace and approve Cohen.
This suit involves a claim by a subcontractor for money due for work performed when the general contractor has not been paid by the owner. Pace Construction *405 (Pace) was the general contractor on a project owned by Shumann Investments (owner). To protect the owner from mechanic's liens, Pace entered into a labor and material payment bond with Transamerica Insurance Company and Seaboard Surety Company as sureties. The payment bond authorized any subcontractor, who had not been paid ninety days after completing its work, to sue under the bond instead of proceeding against the owner's property. OBS Company, Inc. (OBS), subcontracted with Pace to perform the framing, drywall, insulation, and stucco work for the project. OBS completed all of its work as required under the subcontract, but neither Pace nor the surety companies paid OBS the final payment of $47,917.60. There is no dispute as to the proper amount due or that OBS satisfactorily performed its work. The sole reason given for nonpayment was that Pace had not been paid by the owner.
To support its refusal to pay OBS, Pace relied upon provision 6.3 of the subcontract which states:
In addition to any other requirements of this Subcontract and the Contract Documents, Final Payment shall not become due unless and until the following conditions precedent to Final Payment have been satisfied: (a) approval and acceptance of Subcontractor's work by Owner, Architect and Contractor, (b) delivery to Contractor of all manuals, "as-built" drawings, guarantees, and warranties for material and equipment furnished by Subcontractor, or any other documents required by the Contract Documents, (c) receipt of Final Payment for Subcontractor's work by Contractor from Owner, (d) furnishing to Contractor of satisfactory evidence by Subcontractor that all labor and material accounts incurred by Subcontractor in connection with his work have been paid in full, (e) furnishings [sic] to Contractor a complete Affidavit, Release of Lien and Waiver of Claim by Subcontractor in the form attached hereto as Exhibit "D", and as required by the Contract Documents.
(Emphasis added.)
As a result of Pace's failure to make final payment, OBS filed a two-count complaint, seeking damages against Pace for breach of contract and damages against the sureties under the payment bond. At the trial level OBS argued that, because the subcontract expressly included the terms of the agreement between Pace and the owner, provision 6.3 of the subcontract was ambiguous and therefore unenforceable. In the alternative, OBS asserted that the sureties' obligations were predicated on entirely different conditions and any inability to proceed against Pace could not be extended to the sureties. OBS prevailed at trial, but the district court reversed and held Pace not liable because provision 6.3 of the subcontract was unambiguous. It further held that, because Pace was not liable under the subcontract, the sureties could not be liable under the payment bond.
We first address the breach of contract claim against Pace. In Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977), we held that as a general rule the interpretation of contract provisions relative to time and conditions of payment between a contractor and subcontractor was a question of law and not of fact. We further stated:

That intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay the general contractor. And this is the reason for the majority view in this country, which we now join.
Our decision to require judicial interpretation of ambiguous provisions for final payment in subcontracts in favor of subcontractors should not be regarded as anti-general contractor. It is simply a recognition that this is the fairest way to deal with the problem. There is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract must *406 unambiguously express that intention. And the burden of clear expression is on the general contractor.

Id. at 842-43 (emphasis added, footnote omitted).
The district court found that provision 6.3 of the subcontract clearly indicated an intent to shift the risk of the owner's nonpayment from Pace to OBS. Pace Construction, 531 So.2d at 739. If we looked solely at that provision in the subcontract, we would agree. We must, however, also consider the general contract and accompanying general conditions between Pace and the owner because they were expressly included as part of Pace's agreement with OBS.[1] A patent inconsistency exists between the two contracts and creates ambiguity.
Pace argues that it is inappropriate to examine the terms of the general contract and conditions because the subcontract is perfectly clear and precisely reflects the intent of the parties at the time of contracting. We disagree. It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing. J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So.2d 484 (Fla. 1957); United States Rubber Products v. Clark, 145 Fla. 631, 200 So. 385 (1941); McGhee Interests, Inc. v. Alexander National Bank, 102 Fla. 140, 135 So. 545 (1931). Therefore, in interpreting the agreement between Pace and OBS, we must examine the effect of the general contract and conditions on the otherwise clear and unambiguous risk-shifting provision in the subcontract.
The general contract between Pace and the owner was a "cost plus" or reimbursement type contract which required Pace to pay its subcontractors before the owner reimbursed Pace.[2] The concomitant general conditions required Pace to submit an affidavit certifying that its subcontractors had been paid before final payment from the owner became due.[3] In contrast, provision 6.3 of the subcontract clearly required payment from the owner to Pace as a condition precedent to final payment becoming due to OBS. The direct conflict between the subcontract and the general contract and conditions, at the very least, creates some ambiguity as to who should bear the risk of the owner's nonpayment. We must emphasize that, in construing purported risk-shifting provisions, the burden of clear and unequivocal expression is on the general contractor. Peacock, 353 So.2d at 843. In this case Pace has not met that burden.
Once this Court determines that ambiguity exists, such ambiguity must be resolved against the general contractor. *407 Snead Construction Corp. v. Langerman, 369 So.2d 591, 593 (Fla. 1st DCA 1978); Peacock, 353 So.2d at 843. This Court has previously held that, when the intent to shift the risk of nonpayment is not clearly expressed, the payment provision must be interpreted as establishing a reasonable time to pay by the contractor rather than creating a condition precedent to the contractor's obligation to pay the subcontractor. Aetna Casualty & Surety Co. v. Warren Brothers Co., 355 So.2d 785, 786 (Fla. 1978); Peacock, 353 So.2d at 841. We find that, when provision 6.3 of the subcontract is read in conjunction with the general contract and conditions, ambiguity exists and prevents the provision from effectively shifting the risk of the owner's nonpayment from Pace to OBS. Pace thus remains liable for the final payment owed OBS.
If there were no labor and material payment bond involved in this case, our inquiry would end at this point. While the parties' intent as to who should bear the risk of the owner's nonpayment is ambiguous, it is clear that OBS could look to the security of the payment bond in the event it failed to receive final payment for its work.[4] Thus, we now examine OBS's claim against the sureties.
The district court based its refusal to hold the sureties liable on the general principle that the obligation of a surety under its bond agreement is coextensive with that of its principal. Aetna Casualty, 355 So.2d at 788; Cone v. Benjamin, 150 Fla. 419, 430, 8 So.2d 476, 480 (1942). The district court reasoned that, because Pace was not liable under the subcontract, the sureties were not liable under the payment bond. We have already found Pace to be liable, and, through application of this general principle, it follows that the sureties are also liable.
Furthermore, even if we found that the subcontract unambiguously shifted the risk of the owner's nonpayment to OBS, we would still hold the sureties liable under the terms of the payment bond. Restating the general principle of law relied upon by the district court, if the contractor owes the debt, so does the surety. Aetna Casualty, 355 So.2d at 788. Pace owes the debt, but it simply cannot be enforced against Pace unless and until Pace gets paid. Provision 6.3 of the subcontract clearly states that final payment "shall not become due unless and until." (Emphasis added.) Pace remains obligated to pay OBS, but only when the owner pays Pace.
On the other hand, if the debt is not due because of faulty workmanship, full payment, or the like, then the surety may invoke the contention that it is not liable because the principal is not. United States Fidelity & Guaranty Co. v. Miami Sheet Metal Products, Inc., 516 So.2d 29 (Fla. 3d DCA 1987). Similarly, if the principal is not liable because it was not in privity with the entity claiming under the bond, the surety is not liable. Cincinnati Insurance Co. v. Putnam, 335 So.2d 855 (Fla. 4th DCA 1976). In such cases courts have properly applied the general principle that a surety's obligation under its bond agreement is commensurate with that of the general contractor under the subcontract. That principle, however, although applicable, does not prevent recovery in the instant case.
*408 The payment bond is a separate agreement, and any inability to proceed against the general contractor does not necessarily prevent recovery against the sureties under the bond. In this case recovery under the payment bond is in no way conditioned on the owner making final payment to Pace. Nor does the bond incorporate the payment terms of the subcontract. The terms of the bond are quite simple. If Pace promptly pays OBS, then any obligation by the sureties is void. Otherwise, if OBS fails to receive final payment from Pace within ninety days after finishing its work, the sureties are liable. OBS has yet to receive its final payment; therefore, under the terms of the bond, the sureties are liable.
Finally, it would be inequitable to nullify the bonding company's liability because the owner has not paid the contractor. When a surety on a private construction project issues a bond that purports to protect against mechanic's liens, the bond must be construed and applied in accordance with the conditions of section 713.23, Florida Statutes (1983). Guin & Hunt, Inc. v. Hughes Supply, Inc., 335 So.2d 842 (Fla. 4th DCA 1976); Houdaille Industries, Inc. v. United Bonding Insurance Co., 453 F.2d 1048 (5th Cir.1972). See also § 713.23(1)(a), Fla. Stat. (1983). The effect of such a bond is to exempt the owner's property from lien foreclosure and substitute the security of the bond. The bond in this case has all the attributes of a section 713.23 bond, and we declare it to be such a bond.
We agree with the court in Guin & Hunt that a subcontractor is a third-party donee obligee of a section 713.23 bond and, as such, its rights are vested and may not subsequently be defeated by the failure of the owner to comply with the special conditions of the bond.[5]Guin & Hunt, 335 So.2d at 844. While the subcontract in Guin & Hunt did not condition payment to the subcontractor on the owner's payment to the general contractor, such a distinction is not dispositive of the case at bar. See Cohen v. Lunsford, 362 So.2d at 384. In Cohen the court held that, in spite of a valid risk-shifting provision in the subcontract, such a provision did not prevent the subcontractor from recovering against the surety under the payment bond. In fact, because of the existence of the statutory bond, the court refused to permit the subcontractor to sue the owner directly. The owner's statutory exemption cannot be unilaterally altered or eliminated by inserting a provision in the contract between the subcontractor and the general contractor.
To allow nonpayment by the owner to prevent recovery both under the subcontract and the payment bond would thwart the entire purpose and scheme of the mechanics' lien law and statutes allowing a bond in lieu of exposure to liens. Even if we upheld the district court's decision that the subcontract here effectively shifted the risk of the owner's nonpayment to OBS, it would not change the fact that OBS could sue the owner for its final payment. Because the security of the bond has been substituted in place of attaching a lien against the owner's property, OBS clearly has a legitimate claim under the bond.[6]
Accordingly, we quash the opinion under review, approve Cohen, and remand to the district court with instructions to affirm the judgment.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Provision 1.1 of the subcontract states:

The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Agreement between the Owner and Contractor on this Project, the conditions of the Contract between the Owner and Contractor (General Supplementary and other Conditions), Drawings, Specifications, all Addenda issued prior to execution of the Agreement between the Owner and Contractor, and all Modifications issued subsequent thereto. With respect to its work, Subcontractor agrees to be bound to the Contractor by all the items of the Agreement between the Contractor and the Owner and by the Contract Documents and to assume toward the Contractor and the Owner all of the obligations and the responsibilities that the Contractor by those instruments assumes toward the Owner. Subcontractor has reviewed and inspected the Contract Documents.
[2] Provision 5.1 states that "[t]he Owner agrees to reimburse the Contractor for the Cost of Work as defined in Article 8." Provision 8.1 defines the cost of work as those costs "necessarily incurred in the proper performance of the Work and paid by the Contractor." Provision 8.1.6 states that such costs shall include "payments made by the Contractor to Subcontractors for Work performed pursuant to Subcontracts under this Agreement." (Emphasis added.)
[3] Provision 9.9.2 of the general conditions states in pertinent part:

Neither the final payment nor the remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or his property might in any way be responsible, have been paid or otherwise satisfied.
(Emphasis added.)
[4] The applicable language of the bond states that:

NOW; THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:
.....
2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs of expenses of any such suit.
[5] The bond in Guin & Hunt, Inc. v. Hughes Supply Co., 335 So.2d 842 (Fla. 4th DCA 1976), conditioned the surety's obligation to pay the subcontractor on payment by the owner or lender to the general contractor.
[6] It is clear that OBS never intended to, and did not, waive any right under the bond. See American Casualty Co. v. Coastal Caisson Drill Co., 542 So.2d 957 (Fla. 1989).