578 So.2d 879 (1991)
HARRIS AIR SYSTEMS, INC., Appellant,
v.
GENTRAC, INC., Appellee.
No. 90-1788.
District Court of Appeal of Florida, First District.
May 3, 1991.
Dana G. Toole of Lawson, McWhirter, Grandoff & Reeves, Tampa, for appellant.
Stewart B. Capps of Nohrr, Nohrr, Boyd, Howze & Capps, P.A., Melbourne, for appellee.
ZEHMER, Judge.
Harris Air Systems, Inc., appeals an adverse final judgment in its action to recover *880 sums due under its subcontract with Gentrac, Inc. The trial court, after a nonjury trial, ruled that "the condition precedent of the Owner on this construction project paying the Contractor, GENTRAC, INC., has not been met and, therefore, the Plaintiff's claim is premature ..." and dismissed the action. We hold that the written provisions in the subcontract and the contract between the owner and Gentrac, when read in pari materia, reveal sufficient ambiguities in regard to Gentrac's right to receive payment from the owner before being obligated to pay Harris to require a finding that the appealed judgment must be reversed and the cause remanded for further proceedings.
The material facts are essentially undisputed. On September 2, 1987, Gentrac, Inc., as general contractor, and Jacksonville Venture No. Two, as owner and developer, entered into a construction contract in which Gentrac was to furnish certain labor, services, and materials to construct the Mayport Shopping Center for Jacksonville Venture. The general contract consists of the "Standard Form of Agreement Between Owner and Contractor" (AIA Document A101 for payment of a stipulated sum, twelfth edition 1987), the "General Conditions of the Contract for Construction" (AIA Document A201, thirteenth edition 1976), and the "Supplemental Conditions." Section 9.9.2 of Article 9 of the General Conditions provides in pertinent part:
Neither the final payment nor the remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or his property might in any way be responsible, have been paid or otherwise satisfied .. .
Article 6 of the Standard Form of Agreement, as modified by the owner and general contractor, provides in pertinent part:
The owner shall not be obligated to make final payment or pay any retainage and the Work shall not be considered complete unless or until the Owner shall have received: ... (c) a final release of all liens and claims for labor, materials and other forces used or incorporated into the construction of the Work secured by the Contractor and an Affidavit of the Contractor stating that all bills incurred for the purchase of personal property, appliances, machinery and equipment attached or affixed to the Project or the Work are necessary or efficient to the use thereof, had been paid in full.
On January 26, 1988, Gentrac and Harris entered into a subcontract agreement, consisting primarily of a preprinted form of agreement for subcontract, in which Harris agreed to furnish certain labor, services, and materials for the project's heating, ventilation, and air conditioning. Section 4 of that subcontract agreement provides in words preprinted on the form:
It shall be an express condition precedent to the obligation of the Contractor to pay the Subcontractor that the Owner make payments to the Contractor covering the Subcontractor's portion of the work. Upon such payments to the Contractor of the periodic estimate in which the Subcontractor's periodic estimate is incorporated, and only upon the happening of such event and in consideration of the work agreed to be performed hereunder by the Subcontractor, the Contractor agrees to pay the Subcontractor 90% of the periodic estimates submitted, provided however that in the event that the Subcontractor's portion of the Contractor's estimate is reduced for any reason, payment to the Subcontractor will be reduced accordingly. Final payment to the Subcontractor will be made upon receipt of final payment from the Owner, it being expressly understood and agreed that receipt by the Contractor of final payments covering the Subcontractor's portion of the work shall be an expressed condition precedent to final payment to the Subcontractor by the Contractor. It is further understood and agreed that full compliance on the part of the Subcontractor with all other provisions of this contract shall be an expressed condition *881 precedent to the Subcontractor's receiving the final payment.
The language of this provision is generally referred to as shifting the risk of the owner's nonpayment from the general contractor to the subcontractor. Section 12 of the subcontract agreement, also preprinted on the form, provides:
The Subcontractor agrees to be bound to the Contractor by the terms of the Contractor's agreement with the Owner, General Conditions of such contract, the Supplementary General Conditions, the Drawings, Specifications and all other contract documents required of Contractor by Owner, and to assume toward the Contractor all obligations, responsibilities and limitations, including the termination provisions that the Contractor, by those documents, assumes toward the Owner.
It is undisputed that Harris has satisfactorily performed its work, Gentrac has completed the project, and that Harris is owed retainage sums in the amount of $17,515.50. However, the owner, Jacksonville Venture, has not paid Gentrac in full for the project because of a dispute between them unrelated to any of Harris's work. Gentrac refused to pay Harris the retainage funds, so Harris filed suit against Gentrac to recover payment of the balance due under the subcontract agreement, with interest, costs, and attorney's fees. Gentrac moved to dismiss for failure to state a cause of action, arguing insufficiency of the allegations to state that Gentrac breached the contract or Harris's performance of all conditions precedent under the terms of the contract. After a nonjury trial, the circuit court entered a final judgment, ruling that Harris failed to prove compliance with the condition precedent in the subcontract requiring payment by the owner to the general contractor, Gentrac, before the latter would be required to pay Harris, as previously quoted.
Harris contends, relying on the supreme court's opinion in OBS Co., Inc. v. Pace Construction Corp., 558 So.2d 404 (Fla. 1990), that the circuit court erred in ruling that its claim for payment under the subcontract agreement was premature. He argues that when the general contract is read together with the subcontract agreement, there is ambiguity regarding when Gentrac is obligated to pay its subcontractors and who should bear the risk of the owner's nonpayment, and that this ambiguity must be resolved against Gentrac and construed as establishing only a reasonable time for Gentrac to receive payment from the owner before being obligated to pay Harris. Gentrac argues to the contrary, saying there is no such ambiguity and as a matter of law Harris is bound by the clear language of its subcontract, relying primarily on the fourth district's and the supreme court's opinions in DEC Electric, Inc. v. Raphael Construction Corp., 558 So.2d 427 (Fla. 1990), affirming 538 So.2d 963 (Fla. 4th DCA 1989).
The Florida Supreme Court has held that interpretation of provisions in construction contracts that allocate or shift the risk of the owner's nonpayment to either the general contractor or a subcontractor is a matter of law to be determined by the court, explaining that:
[i]f a provision is clear and unambiguous, it is to be interpreted as setting a condition precedent to the general contractor's obligation to pay. If a provision is ambiguous, it is interpreted as fixing a reasonable time for the general contractor to pay. In purported risk-shifting provisions between a contractor and a subcontractor, the burden of clear expression is on the general contractor. Once a judge decides that a provision is ambiguous there is nothing for the jury to decide.
DEC Electric, Inc. v. Raphael Constr. Corp., 558 So.2d at 428-29.
In OBS Co., Inc. v. Pace Constr. Corp., 558 So.2d 404, the supreme court reviewed construction contracts similar to those described above in this case and, finding the contract provisions ambiguous when read together, construed the contracts as preventing the general contractor from shifting the risk of the owner's nonpayment to the subcontractor. In reaching this result, the court first determined that the general contract was incorporated by reference into the subcontract agreement by reason of *882 the following provision in the subcontract agreement:
The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached thereto, the Agreement between the Owner and Contractor of the Project, ... With respect to its work, Subcontractor agrees to be bound to the Contractor by all the items of the Agreement between the Contractor and the Owner and by the Contract Documents and to assume toward the Contractor and the Owner all of the obligations and responsibilities that the Contractor by those instruments assumes toward the Owner... .
Id. at 406 n. 1. The court further determined that when the final payment provisions of the general contract, which required the general contractor to pay its subcontractors before it was entitled to payment by the owner,[1] and the payment provisions of the subcontract, which stated that final payment by the owner to the general contractor was a condition precedent to final payment by the general contractor to the subcontractor,[2] were read together, the obvious conflict and inconsistency between the final payment provisions of the subcontract agreement and the final payment provisions of the general contract created an ambiguity as to which party should bear the risk of the owner's nonpayment. The court concluded that the ambiguity must be resolved against the general contractor, and held that payment provisions of the subcontract agreement "must be interpreted as establishing a reasonable time to pay by the contractor rather than creating a condition precedent to the contractor's obligation to pay the subcontractor." Id. at 407.
In this case now before us, the provisions of the general contract were effectively incorporated into the subcontract agreement by section 12 of the subcontract agreement quoted above. See OBS Co., Inc. v. Pace Constr. Corp., 558 So.2d at 406 ("It is a generally accepted rule of contract law that where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing") (emphasis added). Like the contracts in OBS Co., in this case the final payment provisions of the general contract requiring Gentrac to pay its subcontractors before it is entitled to payment by the Jacksonville Venture,[3] and the provisions of the subcontract agreement requiring that final payment by Jacksonville Venture to Gentrac is a condition precedent to Harris's right to final payment from Gentrac,[4] are in conflict and create an ambiguity regarding when Harris is entitled to payment by Gentrac. That ambiguity must be resolved against Gentrac, the general contractor, and interpreted as establishing a reasonable time for Gentrac to delay in paying Harris, its subcontractor, while awaiting payment from the owner. DEC Electric, Inc. v. Raphael Constr. Corp., supra; OBS Co., Inc. v. Pace Constr. Corp., supra.
The trial court made no finding in respect to whether a reasonable time had passed, having predicated its decision on *883 the absolute nature of the provision in the subcontract. Therefore, the appealed judgment must be reversed. It would appear from the record before us that a reasonable time has now elapsed; however, this is a question of fact that we will defer to the trial court for determination on remand on this record or such additional evidence as the court determines is necessary for it to make that ruling.
REVERSED AND REMANDED.
BOOTH and WOLF, JJ., concur.
NOTES
[1] Provision 9.9.2 of the general conditions in that case provided that:

Neither the final payment nor the remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or his property might in any way be responsible, have been paid or otherwise satisfied. (Emphasis added).
558 So.2d at 406 n. 3.
[2] Provision 6.3 of the subcontract agreement provided:

In addition to any other requirements of this Subcontract and the Contract Documents, Final Payment shall not become due unless and until the following conditions precedent to Final Payment have been satisfied: ... (c) receipt of Final Payment for Subcontractor's work by Contractor from owner, .. . (Emphasis added.).
558 So.2d at 405.
[3] Provision 9.9.2 of the general conditions in this case is identical to provision 9.9.2 of the general conditions in OBS Co.
[4] Section 4 of the subcontract agreement in this case is similar to provision 6.3 of the subcontract agreement in OBS Co.