605 So.2d 903 (1992)
DUNE I, INC., a Florida Corporation, Appellants,
v.
PALMS NORTH OWNERS ASSOCIATION, INC., a Florida Non-Profit Corporation, E. Clark Richardson and wife Dorothy K. Richardson, Ralph Whitlock and wife Laura Whitlock, Scott Richmond and wife Pat Richmond, Archie Sheffield and wife Peggy Sheffield, Ron Peterson and wife Jerry Peterson, Larry Hockman and wife Kathey Hockman and Don Darnall, Appellees.
No. 91-3150.
District Court of Appeal of Florida, First District.
September 4, 1992.
Rehearing Denied October 14, 1992.
*904 Deborah M. Overstreet of Burke & Blue, P.A., Panama City, for appellant.
Joseph D. Lorenz, Fort Walton Beach, for appellees.
ERVIN, Judge.
Appellant, Dune I, Inc. (Dune), one of the defendants named in the suit below, seeks review of a trial court order declaring Dune Community Association, Inc. (DCA), which was also named as a defendant below, to be the fee simple owner of certain property, requiring Dune to convey that property to DCA, and directing Dune to pay attorney's fees and costs to appellees, Palms North Owners' Association, Inc., the homeowners' association for the condominium project known as Palms North, and various individual unit owners thereof, who were the plaintiffs below. We reverse.
Dune is a Florida corporation whose principal business is the development of real estate. It developed two parcels of real property on either side of Highway 30-A in Walton County, Florida, as condominium projects. The property on the south side of the highway, The Palms of Dune Allen, was developed first, followed by Palms North on the north side of the highway. At the time Dune began developing these projects, sewer facilities were not provided by the county. Consequently, Dune built a sewer treatment facility to serve both projects on land that was eventually developed as Palms North. Dune also constructed dune walkovers to access the beach. The dune walkovers and the sewer treatment plant, together with the land on which they were constructed, were designated community property and were subject to a community property agreement (CPA) entered into between Dune and the original homeowners' association, DCA. Under the terms of the CPA, all community property was to be conveyed by Dune to DCA. The date for said conveyance was disputed below; appellees claimed Dune was required to convey the property no later than January 1, 1987, while appellant contended it had until all the units at Palms North were sold, or January 1, 1990, whichever occurred first.
The impetus of this suit was Dune's deletion of the sewer treatment facility and the land on which it was built from the CPA on March 25, 1988, following notification from the county that both condominium projects would be required to connect with new public sewer facilities.[1] At the time the property was deleted, although both The Palms of Dune Allen and Palms North had been constructed, not all of the units at Palms North had been sold,[2] and Dune had *905 not conveyed any of the community property to DCA. Palms North Owners Association, Inc., and the individual unit owners at Palms North filed their complaint seeking declaratory relief, requesting that DCA be named as the fee simple owner of the property; specific performance, requiring Dune to convey the property to DCA; damages; and attorney's fees and costs.
It was appellees' position at trial that Dune was required under paragraph 8 of the CPA to convey the community property to DCA no later than January 1, 1987; therefore, the deletion that occurred on March 25, 1988 was void. Dune, on the other hand, introduced evidence that the January 1, 1987 date contained in paragraph 8 was a scrivener's error, and that the parties had intended that the community property be conveyed when all the units were sold, or by January 1, 1990, whichever occurred first. The trial judge found for appellees and entered a final judgment declaring DCA the fee simple owner of the property, finding that the March 25, 1988 deletion was void, because Dune had no right to delete the property after January 1, 1987; requiring Dune to convey the property to DCA; awarding appellees damages, which were, however, offset by expenses incurred by Dune; and requiring Dune to pay appellees' attorney's fees and costs.
The error in this case involves the trial court's interpretation of the CPA. Although courts are without power to make or rewrite contracts for the parties, they do have the power to interpret them. Haenal v. United States Fidelity & Guar. Co. of Baltimore, Md., 88 So.2d 888 (Fla. 1956). It is a cardinal rule of contract construction that the intention of the parties governs. Hughes v. Professional Ins. Corp., 140 So.2d 340, 345 (Fla. 1st DCA), cert. denied, 146 So.2d 377 (Fla. 1962). The need for judicial interpretation does not arise if the contract language is clear. If, however, the contract language is unclear and ambiguous, the court may receive extrinsic evidence regarding the contract for the purpose of determining the intent of the parties. Gulf Cities Gas Corp. v. Tangelo Park Serv. Co., 253 So.2d 744, 748 (Fla. 4th DCA 1971). Additionally, the court may consider other documents that are part of the same transaction. See Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2d DCA 1973) (parol evidence admitted to show that loan guaranty was signed with understanding that loan agreement terms and conditions would govern guaranty). See also Harris Air Sys., Inc. v. Gentrac, Inc., 578 So.2d 879 (Fla. 1st DCA 1991) (subcontract and general contract construed together). The parties in the instant case agree that the prospectus for Palms North should be considered in interpreting the CPA.
When a contract contains conflicting or repugnant clauses, an ambiguity exists. See Harris Air Sys., Inc., 578 So.2d at 882 (ambiguity created by conflict in final payment provisions in subcontract and general contract); Kasweck v. Florida Inst. of Technology, 590 So.2d 1100, 1102 (Fla. 5th DCA 1991) (inconsistencies between term of appointment and review date of employment contract created ambiguity). Under such circumstances, the approved rules of construction require the court to interpret the contract in a manner that would reconcile the conflicting clauses if possible. If, however, reconciliation is not possible, the court must adopt a reasonable interpretation. Triple E Dev. Co. v. Floridagold Citrus Corp., 51 So.2d 435, 438-39 (Fla. 1951) (en banc); 11 Fla. Jur.2d Contracts § 118 (1979).
In the instant case, an ambiguity exists in paragraph 8 of the CPA, requiring Dune to convey the community property no later than January 1, 1987, because it conflicts with other portions of the CPA and the prospectus that require Dune to convey the property when the last unit of Palms North is sold or January 1, 1990, whichever occurs first. In that the conflicting dates cannot be reconciled, the trial court was required to adopt a reasonable interpretation consistent with the parties' intent. Based on our review of the record, including the prospectus and the entire CPA, we conclude that the trial court's interpretation that the CPA required transfer of the *906 property by January 1, 1987 was erroneous.
Admittedly, paragraph 8 of the CPA does state that Dune must convey the community property by January 1, 1987; however, the words preceding that date must not be overlooked. The full text of paragraph 8 provides:
The Developer covenants to convey fee simple title to the Community Property to the Community Association [DCA] subject to restrictions similar to all restrictions set forth under RESTRICTIONS and subject to reservations similar to the reservations set forth under RESERVATIONS. Such fee simple title shall not be subject to any lien or mortgage made by or payable by the Developer for the improvement of said Community Property by the Developer. Said conveyance shall be executed and delivered by the Developer to the Community Association as soon as the Developer has closed the sales of all of the units of The Palms of Dune Allen, a condominium, and the future condominium [Palms North], or January 1, 1987, whichever occurs first.
(Emphasis added.)
Paragraph 8 of the prospectus, which must be considered together with paragraph 8 of the CPA, in addressing ownership of the community property, states in pertinent part as follows:
The commonly used facilities described herein which are not "common elements" will be initially owned by the Developer subject to the use rights and privileges granted by the Community Property Agreement to the Community Association in trust for unit owners of Palms North, a Condominium during the development period and will ultimately be conveyed to the Community Association in trust for the unit owners of Palms North, a Condominium and the unit owners of The Palms of Dune Allen, a Condominium and the unit owners of The Palms of Dune Allen, a Condominium, are described in more detail on Exhibit I(B). For specific terms, conditions and other information, refer to the Community Property Agreement attached to the Declaration of Condominium of Palms North, a Condominium as Exhibit A. The Community Property Agreement shall expire on the date selected by the Developer provided that in any event that date shall not be later than the date the Developer has completed and sold all units within Palms North, a Condominium, or January 1, 1990, whichever occurs first. Upon expiration of the Community Property Agreement, the Developer is required to convey the commonly used facilities described herein as "Community Property" to the Community Association and the Community Association is required to accept the deed to the Community Property.
(Emphasis added.)
Additionally, the prospectus states, in regard to the CPA: "The commonly used facilities which are not common elements are referred to in Exhibit I(B) as `Community Property' and are owned by the Developer subject to the Community Property Agreement during the development period and upon termination of the development period will be conveyed by the Developer to the Community Association and will thereafter be owned by the Community Association in trust for the use and benefit of the owners of Palms North... ." (Emphasis added.) The development phase is defined in the CPA as including the "time from the execution of this Agreement until the development of the future condominium [Palms North] has been completed or until January 1, 1990, whichever shall first occur." (Emphasis added.)
Finally, we note that both the prospectus and the Palms North declaration of condominium, which is part of the prospectus, state that the anticipated completion date for the first phase of Palms North was July 31, 1985. Dune reserved the right, however, to expand the project by adding a second phase. Notice of such intended expansion was to be filed by July 31, 1987, and was in fact extended until July 31, 1988. It logically follows that completion of the second phase was not intended by *907 the parties as of January 1, 1987, because notice of intent to add it was not even required to be filed until July 31, 1987, at the earliest.
As for Dune's right to delete the property from the CPA, paragraph 1(c) of the "Reservations" section of the CPA provides that the developer reserves:
The right and privilege of reducing the Community Property including the right and privilege of withdrawing or deleting portions of the lands or improvements constituting the Community Property; provided that, such withdrawal or deletion shall not result in the provision of a lesser amount of Community Property than required by RESERVATION (a)(2) above.[[3]]
Paragraph 16 of the CPA establishes the following procedure to be employed for such deletions:
As the Developer determines in its sole discretion, from time to time, to submit additional lands to this Agreement or to delete lands herefrom, the Developer will file amendments to this Community Property Agreement which will submit to or delete from this Community Property Agreement the additional lands and improvements described therein. Any and all such amendments need to be signed and acknowledged only by the Developer and need not be approved by the Community Association, its members, the owners of units served by the Community Property or by any lienors or mortgagors of any of the units served by the Community Property, the Community Association or its members, whether or not elsewhere required for an amendment.
Although the findings of a trial judge in a nonjury trial arrive at this court clothed in a presumption of correctness, such findings may be reversed if they are not supported by competent, substantial evidence in the record. City of Miami Beach v. Fein, 263 So.2d 258, 262 (Fla. 3d DCA), cert. denied, 270 So.2d 18 (Fla. 1972). Based upon our review of the entire record, we find nothing to support the trial court's interpretation that the CPA required transfer of the community property to DCA by January 1, 1987. Rather, the intent of the parties, as evidenced by all of the above provisions, was that the developer would hold title to the community property until the last unit at Palms North was sold, or January 1, 1990, whichever first occurred. Thus, the only reasonable interpretation the trial court could have adopted was that the January 1, 1987 date was erroneous and that Dune, under the circumstances, should have had until June 26, 1989, when the last unit at Palms North was sold, to convey the community property.
As for the deletion itself, Dune presented evidence at trial that it had expended funds in excess of $500 per unit on the remaining community property. In addition, Dune showed that it accomplished the deletion by filing the appropriate amendment to the CPA on March 25, 1988, prior to when the last unit at Palms North was sold. Because Dune could rightfully delete the sewer plant property from the CPA under the terms of that agreement, and because it did so in accordance with the conditions associated therewith, the deletion of March 25, 1988 was proper. Therefore, that portion of the final judgment determining DCA to be the owner of the sewer plant property and requiring Dune to convey same to DCA is reversed. Moreover, because the property remained with Dune, Dune was free to dispose of the same as it wished. Consequently, all expenses associated with its cleanup were Dune's, as were the profits from its sale. Consequently, that portion of the order assessing damages is also reversed.
As to the court's award of attorney's fees, even if we were to conclude that this suit was a shareholders' derivative action, *908 there is no statutory authority to support the judge's order that Dune shall pay attorney's fees. Therefore, that portion of the judgment directing Dune to pay attorney's fees and costs to appellees is also reversed.
REVERSED and REMANDED for entry of a judgment consistent with this opinion.
MINER, J., concurs.
WEBSTER, J., concurs in result only.
NOTES
[1] Dune also deleted the dune walkovers at the same time; however, Dune admitted at the trial that such deletion was an error and agreed to take whatever steps were necessary to transfer that property to DCA.
[2] The last unit in Palms North was sold on June 26, 1989.
[3] Reservation (1)(a)(2) provides that "the amount expended by the Developer on the Community Property shall be at least Five Hundred Dollars ($500) per unit served by the Community Property. In order to determine the amount expended per unit, the total amount expended on the Community Property by the Developer from the inception of The Palms of Dune Allen, a condominium, to the date the determination is being made shall be divided by the total number of units served by the Community Property on the date the determination is being made."