## CIRCUIT COURT OF THE CITY OF NORFOLK

W. O. Grubb Steel Erection, Inc.

   v.

515 Granby, L.L.C., et al.

          Case No. (Civil) CL08-3278

Atlantic Metrocast, Inc.

   v.

515 Granby, L.L.C., et al.

          Case No. (Civil) CL08-3816

International Construction
Equipment, Inc., et al.

   v.

515 Granby, L.L.C., et al.

          Case No. (Civil) CL08-4280

Turner Construction Co.

   v.

515 Granby, L.L.C., et al.

          Case No. (Civil) CL08-5050

Clayton B. Obersheimer, Inc.

v.

515 Granby, L.L.C., et al.

Case No. (Civil) CL08-7529

October 16, 2009

BY JUDGE EVERETT A. MARTIN, JR.

Turner Construction Company ("Turner") was the general contractor on the ill-fated Granby Tower project, and Suburban Grading & Utilities ("Suburban") was one of its subcontractors. Suburban has performed significant work, and Turner has not paid it. Suburban has filed a cross-claim against Turner for breach of contract. Count II seeks damages of $575,928 for work performed through September 17, 2007. Count III seeks damages of $245,662 for "dewatering" though March 17, 2008. Both parties have filed motions for summary judgment. The facts supporting the motions are not disputed; the enforceability of the "pay-if-paid" clause of their subcontract is.

The Supreme Court of Virginia has held that "pay-if-paid" clauses in contracts between general contractors and subcontractors are enforceable "where the language of the contract in question is clear on its face." *Galloway Corp. v. S. B. Ballard Constr. Co.*, 250 Va. 493, 501, 464 S.E.2d 349, 354 (1995). Article IV of the subcontract between the parties provides:

> On or before the last day of each month the Subcontractor shall submit to Turner, in the form required by Turner, a written requisition for payment showing the proportionate value of the Work installed to that date, from which shall be deducted: a reserve of ten per cent (10%); all previous payments; all amounts and claims against Subcontractor, by Turner or any third party, for which Subcontractor is responsible hereunder; and all charges for services, materials, equipment and other items furnished by Turner to or chargeable to the Subcontractor, and the balance of the amount of such requisition, as approved

by Turner and the Architect and for which payment has been received by Turner from the Owner, shall be due and paid to the Subcontractor on or about the fifteenth (15th) day of the succeeding month or in accordance with the Contract Documents.

The obligation of Turner to make a payment under this Agreement, whether a progress or final payment, or for extras or change orders or delays to the Work, is subject to the express condition precedent of payment therefor by the Owner.

At the hearing on September 9, Suburban conceded this was an unambiguous "pay-if-paid" clause. Suburban claims it is not enforceable because it is rendered ambiguous by certain clauses of the contract between Turner and the owner, which contract was incorporated by reference into its subcontract. Additional Provisions APII B. Turner does not dispute the incorporation by the reference.

Suburban principally relies upon §§ 6.1.1 and 6.1.3 of Turner's contract with the owner (Form A121), which provide:

§ 6.1.1 The term "Cost of the Work" shall mean costs incurred by the Construction Manager [Turner] in the proper performance of the Work. . . . The Cost of the Work shall include only the items set forth in this Article 6.

§ 6.1.3 *Subcontract Costs*: Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

Suburban claims these provisions require Turner to pay it before the owner pays Turner because Turner may only bill the owner for "Payments *made*" to subcontractors. Suburban emphasizes the use of *"made*," a past tense verb, and the use of other past tense verbs in other sections of Article 6. Suburban misconstrues the very purpose of Article 6. That article defines the total *amount* the owner is required to pay Turner. See §§ 5.1.1, 5.2.1. It is not concerned with *when* Turner is to pay subcontractors. Article 7 governs the timing of payments, and it only covers payments from the owner to Turner.

I also note that § 6.1.1 uses "incurred" not "paid," and that § 6.1.3 provides that payments made are to be "in accordance with the requirements of the subcontracts." Among those requirements is the "pay-if-paid" clause. This undercuts the notion that these provisions have the effect Suburban claims.

I have read *OBS Co. v. Pace Construction Corp.*, 558 So. 2d 404 (Fla. 1990), and *MECO Systems, Inc. v. Dancing Bear Entertainment, Inc.*, 42 S.W.3d 794 (Mo. App. 2001), and I do not find them at all persuasive. Neither court discussed the purposes of the provisions of the contract between the owner and the general contractor upon which it relied (here §§ 6.1.1 and 6.1.3). The Florida Supreme Court simply quoted them in a footnote without providing any context and pronounced that the provisions required the general contractor to pay its subcontractors before receiving payment from the owner. The Missouri Court of Appeals relied "heavily" on *OBS*, 42 S.W.3d at 807. There are some minor differences among the terms of the owner-general contractor contracts in *OBS, MECO,* and here upon which I could attempt to distinguish them, but the differences would not justify a reasoned distinction.

Within Article 7, Suburban relies in a very minor way (see brief of July 13, part I.F., p. 17) on § 7.1.4, which provides:

> With each Application for Payment, the Construction Manager shall submit payrolls, petty cash amounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that *cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed* (1) progress payments already received by the Construction Manager; less (2) that portion of those payments attributable to the Construction Manager's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

(Emphasis added.)

If the owner and Turner intended that Turner would pay subcontractors before the owner paid Turner, this is an oblique way to so provide. This section specifies the documents Turner is to provide with each application for payment, in part, to give the owner assurance the payments are properly being disbursed. Section 7.1.6 is also to be considered in determining the amount of a progress payment. It provides:

> Applications for Payment shall show the percentage completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed or (2) the percentage obtained by dividing (a) *the expense which has actually been*

*incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment* by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

(Emphasis added.)

This section no more authorizes Turner to delay payment to subcontractors until it has been paid than § 7.1.4 requires Turner to pay the subcontractors before receiving payment from the owner. Both sections provide what is to be submitted with payment applications. The actual amount of a progress payment is determined by § 7.1.7, which says nothing about the timing of Turner's payments to its subcontractors.

Even if §§ 6.1.1, 6.1.3, and 7.1.4 could be construed to create an ambiguity, such an ambiguity is resolved by the priority clause in Article II of the subcontract, which provides:

This Subcontract Agreement, the provisions of the General Contract, and the other Contract Documents are intended to supplement and complement each other and shall, where possible, be thus interpreted. If, however, any provision of this Subcontract Agreement irreconcilably conflicts with a provision of the General Contract and the other Contract Documents, the provision imposing the greater duty or obligation on the Subcontractor shall govern.

Under Suburban's construction of Turner's contract with the owner, its only obligations to entitle it to payment were the satisfactory completion of its work and the submission of a payment application. The subcontract imposed an additional obligation, waiting for Turner to be paid. As Suburban contends, I recognize that form A121 is superior to form A201 in the event of any conflict between them. A201, § 1.2.4. However, effect is to be given to every provision of the contract if possible. *Ames v. American National Bank*, 163 Va. 1, 38-39, 176 S.E. 204, 216-17 (1934). It may be a minor point, but Suburban's construction of the contract documents would render §§ 9.6.2 and 9.6.7 of A201 meaningless. These sections are not "pay-if-paid" clauses, but they certainly show an intent of the parties that Turner need not pay its subcontractors until the owner has paid Turner. They are the only provisions of the contract documents between the owner and Turner that have been

brought to my attention that explicitly address the timing of Turner's payments to its subcontractors. I observe, finally, that Suburban has not shown any provision of the contract documents that would be rendered meaningless by Turner's construction of them.

I grant Turner's motion for summary judgment. I deny Suburban's.