*532
 
 JACOBUS, J.
 

 International Engineering Services, Inc. (“IES”) timely appeals the entry of a final summary judgment in favor of Scherer Construction & Engineering (“Scherer”) on its breach of contract claim. The lower court entered summary judgment in favor of Scherer based upon a pay-when-paid clause in the subcontract agreement between IES, the subcontractor, and Scherer, the general contractor. On appeal, IES contends that the pay-when-paid clause in the subcontract is ambiguous and, therefore, is not enforceable. It also contends that if the clause is found to be unambiguous, then it becomes ambiguous when considered in conjunction with the terms of the contract between Scherer and the project owner (“prime contract”). As a result of the ambiguities in the contract, IES argues that it was error for the trial court to enter summary judgment in favor of Scherer. We find, based upon the language contained in the subcontract and in the prime contract, the pay-when-paid clause is ambiguous and unenforceable. We therefore reverse the final summary judgment entered in favor of Scherer and remand the cause back to the trial court for entry of judgment in favor of IES.
 

 In early 2008, IES and Scherer entered into a subcontract in which IES agreed to perform the structural steel work on a project in Maitland, Florida. IES performed all the work required under the parties’ contract. After the work was finished, Scherer issued two written contract change orders, which increased the subcontract amount to $98,680. Although IES performed all the obligations under the subcontract, it did not receive payment from Scherer. IES then filed suit against Scherer alleging a breach of contract and seeking $98,680. In its answer, Scherer asserted a single affirmative defense: that the subcontract contains a pay-when-paid clause, which provides that payment by the project owner to Scherer is an express condition precedent to any obligation of Scherer to pay IES. Because Scherer had not been paid by the project owner, the condition precedent to Scherer’s obligation to pay IES had not yet occurred and payment was not due.
 

 Both parties filed motions for summary judgment. At the hearing on those motions, the trial court found that the language in the subcontract was not ambiguous and it was clearly meant to shift the burden of nonpayment from the contractor to IES, the subcontractor.
 

 The pay-when-paid clauses in the contract between the parties are found in Articles 6 and 7 of the subcontract. Article 6 of the subcontract provides in part:
 

 I. The Contractor shall pay the Subcontractor Progress Payments for work performed and material suitably stored and inventoried on the job-site (materials delivered to and stored at the site shall be limited to materials required to be incorporated into Subcontractor’s work in the immediate future, taking into account any space restrictions at the job site) in monthly payments. Such payments are payable on or about the 20th of the following month. Subcontractor shall be responsible for proper storage and for any damage, defect, deficiency or theft or any materials stored on the project site, regardless of fault. Notwithstanding anything contained in any of the Contract Documents to the contrary, Subcontractor agrees that all progress payments and final payment to Subcontractor are contingent upon and subject to Owner’s acceptance of Subcontractor’s work and upon contractor’s receipt of payment from Owner. Subcontractor agrees to accept the risk of non-payment if Contractor is not paid progress payments and/or final
 
 *533
 
 payment from Owner, for any reason. Subcontractor further agrees that Owner’s payment to Contractor of all progress payments and final payment for any work performed by Subcontractor, other Subcontractors and Contractor shall be an express condition precedent to any obligation of Contractor to make any progress payment, retainages, or final payment to Subcontractor, and Subcontractor hereby waives all right to commence litigation or arbitration until payment is made to Contractor. Contractor, in its sole discretion, may make payment to Subcontractor by checks made payable jointly to Subcontractor and Subcontractor’s sub-subcontractors, materialmen, laborers, and suppliers.
 

 Article 7 states as follows:
 

 1. Final Payment shall be due when the work described in this Subcontract is fully completed and performed in accordance with the Contract Documents, is satisfactory to the Owner and Architect, and Final Payment has been made by the Owner to the Contractor.
 

 IES argues that these two clauses are ambiguous. In
 
 Peacock Construction Co., v. Modern Air Conditioning, Inc.,
 
 353 So.2d 840 (Fla.1977), our supreme court addressed a situation similar to this case. It explained as follows:
 

 [The parties’] intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor’s duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner’s failure to pay the general contractor. And this is the reason for the majority view in this country, which we now join.
 

 Our decision to require judicial interpretation of ambiguous provisions for final payment in subcontracts in favor of subcontractors should not be regarded as anti-general contractor. It is simply a recognition that this is the fairest way to deal with the problem. There is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract must unambiguously express that intention. And the burden of clear expression is on the general contractor.
 

 Id.
 
 at 842^13 (footnotes omitted) (emphasis supplied). If a risk-shifting provision is clear and unambiguous the court will interpret it as setting a condition precedent to the general contractor’s obligation to pay.
 
 DEC Elec., Inc. v. Raphael Constr. Corp.,
 
 558 So.2d 427, 429 (Fla.1990). If, however, the provision is ambiguous, a court will interpret it as fixing a reasonable time for the general contractor to pay.
 
 Id.
 

 Article 6 is a clear expression that the parties intended for IES to assume the risk of loss for nonpayment. IES argues that Article 7 is ambiguous because it is very similar to the language found in
 
 Peacock.
 
 If Article 7 was the only expression in the contract regarding payment, then IES’s argument would be well-taken,
 
 Peacock
 
 would apply, and IES would be entitled to payment in a reasonable time. However, when Articles 6 and 7 are read together, it is apparent that the parties expressly and unambiguously intended to shift the risk of nonpayment to IES for progress payments and final payments.
 

 This finding, however, does not end our inquiry. Article 2 of the subcontract between the parties is relevant to the arguments on appeal. It reads as follows:
 

 The “Contract Documents” for this Subcontract consist of this Agreement, the terms, conditions or instructions contained in the transmittal letter from the
 
 *534
 
 Contractor to the Subcontractor delivering this subcontract for execution by the Subcontractor, any exhibits attached hereto, the Agreement between the Owner and Contractor dated (prime contract), the conditions of the Architect, all approved drawings and architectural plans and specifications, all modifications issued prior to execution of the Agreement between the Owner and Contractor, and all modifications issued subsequent thereto.
 

 Article 2 of the subcontract clearly incorporates the prime contract by reference. The prime contract provides:
 

 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner’s property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied.
 

 This term in the prime contract provides that the owner is not obligated to pay Scherer until Scherer has paid all its subcontractors. By incorporating the prime contract into the subcontract, the pay-when-paid clause becomes ambiguous.
 

 This situation is analogous to that found in
 
 OBS Co. v. Pace Construction Corp.,
 
 558 So.2d 404 (Fla.1990). In that case, the subcontract contained a clear pay-when-paid clause.
 
 Id.
 
 at 406. The subcontract incorporated by reference the contract between the general contractor and the owner.
 
 Id.
 
 The court concluded that this created an ambiguity regarding who should bear the risk of the owner’s nonpayment.
 
 Id.
 
 The
 
 OBS
 
 court emphasized that “in construing risk-shifting provisions, the burden of clear and unequivocal expression is on the general contractor.”
 
 Id.
 
 Therefore, the court held that Pace, the general contractor, remained liable for the final payment it owed to OBS, the subcontractor.
 
 Id.
 
 at 407;
 
 see also Harris Air Sys., Inc. v. Gentrac, Inc.,
 
 578 So.2d 879, 882 (Fla. 1st DCA 1991) (holding that final payment provisions of general contract and subcontract conflicted and created ambiguity regarding when subcontractor was entitled to payment by general contractor, ambiguity must be resolved against general contractor).
 

 Here, an ambiguity exists when the pay-when-paid clause is read in combination with the prime contract and its conditions. This ambiguity must be resolved against Scherer, the general contractor, and interpreted as establishing a reasonable time for Scherer to pay IES.
 
 See OBS,
 
 558 So.2d at 407;
 
 Gentrac,
 
 578 So.2d at 882.
 

 We have considered the parties’ remaining arguments and find them to be without merit. The final judgment is reversed and the matter is remanded to the trial court for entry of a judgment in favor of IES.
 

 REVERSED and REMANDED for JUDGMENT in favor of International Engineering Services, Inc.
 

 ORFINGER, C.J. and TORPY, J„ concur’.