816 So.2d 164 (2002)
BENEFIT ASSOCIATION INTERNATIONAL, INC., Appellant,
v.
The MOUNT SINAI COMPREHENSIVE CANCER CENTER, Appellee.
No. 3D00-657.
District Court of Appeal of Florida, Third District.
May 1, 2002.
*165 Hessen, Schimmel & De Castro and Robert L. Schimmel, Miami, and Allan J. Atlas, Fort Myers, for appellant.
Ronald D. Poltorack, Sunrise, for appellee.
Before SCHWARTZ, C.J., and FLETCHER and SORONDO, JJ.
PER CURIAM.
Benefit Association International, Inc. (Benefit) seeks review of the lower court's entry of a non-final Order on Motion to Compel Arbitration and Abate Proceedings, on the grounds that the lower court erred in compelling arbitration in a forum other than the one provided for in the parties' contract. We review this matter as an appeal of a non-final order, pursuant to Florida Rule of Appellate Procure 9.130(a)(3)(A).

I. FACTS
Victor Setton, a Panamanian resident, applied for an international health insurance policy from Benefit in January 1996, through an agent in Panama. Setton completed an application for insurance in Spanish, wherein he indicated that he was a permanent resident of Panama.[1] The application contains contact information regarding Benefit's administrative office in Miami, Florida. In February 1996, Benefit issued a health insurance policy to Setton in Panama. The policy, which is written in English, includes an arbitration and venue selection clause requiring arbitration in Jackson, Mississippi of any disputes arising from the policy or its alleged breach,[2] as well as a ten-day right to return *166 policy provision.[3] The policy instructs those insured to submit their claims to Benefit's administrative office, Morgan White Administrators, Inc, c/o WorldNet Services Corp., located in Bay Harbor Islands, Florida, or to a claims office in the insured's local area appointed by the company.[4] The insurance contract does not contain a choice of law provision.
Between April 1997 and February 1998, Setton incurred medical expenses at The Mount Sinai Comprehensive Cancer Center (Mount Sinai) in Florida. He submitted a claim, which Benefit declined to pay on the basis that there was no coverage in effect at the time the charges were incurred. Thereafter, Setton assigned his benefits under the policy to Mount Sinai, which, in turn, demanded payment from Benefit. Benefit rejected Mount Sinai's claim and refused to make payment, asserting that at the time Setton incurred the medical expenses, the policy had expired.
Mount Sinai filed suit in Miami Dade County, Florida against Setton (for quantum meruit, open account and account stated) and Benefit (for breach of contract). Thereafter, Mount Sinai voluntarily dismissed Setton from the action.
Benefit moved to compel arbitration and abate the judicial proceedings. Following a hearing on the matter, the lower court entered an order compelling arbitration in South Florida,[5] finding that ordering arbitration in Jackson, Mississippi would be against public policy.[6]
Benefit filed a notice of appeal, seeking review of the trial court's order on the grounds that the court erred in compelling arbitration in South Florida, instead of Jackson, Mississippi.

II. ANALYSIS
The insurance contract at issue provides for commerce among the states, territories and foreign nations as described in the United States Arbitration Act [the Federal Arbitration Act], 9 U.S.C. §§ 1 and 3, and is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), adopted and incorporated as Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201-208. The Federal Arbitration Act, under which the Convention is implemented, governs the enforcement, validity and interpretation of arbitration provisions in commercial contracts in state and federal courts. See Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 269-73, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Indust. Risk Insurers v. M.A.N Gutehoffnungshutte, GmbH, 141 F.3d 1434, 1440 (11th Cir.1998).[7] Chapter Two of the Federal *167 Arbitration Act establishes a strong presumption in favor of arbitration of international commercial disputes. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). As an exercise of Congress' treaty power and as federal law, "[t]he Convention must be enforced according to its terms over all prior inconsistent rules of law." Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex), 767 F.2d 1140, 1145 (5th Cir.1985). Absent some exceptions not applicable here, federal rather than state law governs international arbitration agreements. General Electric Co. v. Deutz Ag, 270 F.3d 144, 154 (3d Cir.2001)(citing Scherk, 417 U.S. at 519-20, 94 S.Ct. 2449).
Section 202 of the Federal Arbitration Act defines which arbitration agreements and awards are enforceable under the Convention:
An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.
9 U.S.C. § 202. Section 2 of the Federal Arbitration Act provides that a written arbitration provision is enforceable if it is in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.[8] The Supreme Court has interpreted section 2 to apply to all contracts that Congress could regulate under the Commerce Clause. Allied Bruce, 513 U.S. at 273-74, 115 S.Ct. 834.
A court presented with a request to refer a dispute to arbitration under Chapter Two of Federal Arbitration Act should conduct a very limited inquiry. The court must initially resolve four questions: (1) is there an agreement in writing to arbitrate the subject dispute?; (2) does the agreement provide for arbitration in the territory of a signatory of the Convention?; (3) does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial?; and (4) is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? Sedco, 767 F.2d at 1144-45; Ledee v. Ceramiche Ragno, 684 F.2d 184, 186-87 (1st Cir.1982). If the court finds the requirements are satisfied, it must order arbitration unless it finds the agreement "null and void, inoperative or incapable of being performed."[9] Convention, art. II(3).
Here, the insurance policy meets the first two prongs as it expressly calls for arbitration in the United States, a signatory to the Convention. As to the third prong, the record shows that Benefit offers *168 its services internationally and that it engaged in foreign commerce when it formed the contractual relationship with Setton. Thus, the insurance contract at issue is commercial in nature for purposes of the Federal Arbitration Act and the Convention. See Int'l Medical Group, Inc. v. American Arbitration Ass'n, No. IP-00-1020-C-B/S, 2001 WL 315347 (S.D.Ind. March 31, 2001) (global health insurance contract considered commercial arbitral agreement, subject to Federal Arbitration Act and Convention); Connecticut Gen. Life Ins. Co. v. Sun Life Assur. Co. of Canada, 210 F.3d 771 (7th Cir.2000) (applying Federal Arbitration Act to dispute over reinsurance contracts); DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71 (1st Cir.2000) (Convention applicable to dispute over arbitration clause contained in insurance policy). As to the final prong, the international health insurance contract was designed to have a reasonable relation with one or more foreign states by virtue of the services it offered to permanent residents of foreign countries. The insurance contract at issue has a particular reasonable relationship with Panama because Setton applied for the insurance policy through an agent in Panama, his country of permanent residence, and he ultimately took delivery of the international health insurance policy in Panama.[10] As such, all of the requirements are satisfied. Furthermore, we find no basis to conclude that the agreement is "null and void, inoperative or incapable of being performed." Accordingly, the insurance contract is subject to the provisions of the Federal Arbitration Act and the Convention.
Given the strong federal policy favoring arbitration, particularly in the international arena, we conclude that the trial court did not err in compelling the parties to submit the breach of contract claim[11] to arbitration. The issue is whether the trial court erred in ordering arbitration in Florida. We review the enforceability of the forum selection clause de novo. Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290-91 (11th Cir.1998).
Under section 206, a court "may direct that arbitration be held in accordance with the [parties'] agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. In this case, the parties agreed to arbitrate any disputes arising out of the policy or its alleged breach in a specific forum, namely, Jackson, Mississippi. Forum selection clauses, such as the one here, are presumptively valid and should be enforced, "unless [the resisting party] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); see Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (refining analysis in Bremen to account for form passage contracts; holding that forum selection clauses in form passage contracts are subject to judicial scrutiny for fundamental fairness).
Mount Sinai argues that it would be contrary to public policy to require arbitration in Jackson, Mississippi based on the following: Setton completed Benefit's application in Spanish but was issued an *169 insurance policy written in English; Jackson, Mississippi is a remote location that has no connection to the matter; Benefit has its claims and administrative offices in Florida; and Setton incurred the medical bills in Florida. We do not find any merit in Mount Sinai's arguments. To begin with, the record does not support Mount Sinai's conclusory claim that Setton accepted the policy without understanding or being fully informed of its contents, specifically the arbitration clause and the return policy. Upon receipt of the policy, Setton had the right to return it for any reason within ten days. However, the record indicates he accepted the policy without objecting to any of its provisions. In doing so, Setton agreed to the terms of the policy, including the arbitration clause and forum selection clause.[12] As Setton's assignee, Mount Sinai is bound by the terms and conditions to which Setton agreed. See Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir.2001); DiMercurio, 202 F.3d at 81; Houk v. Comm'r of Internal Revenue, 173 F.2d 821, 825 (5th Cir.1949). Furthermore, Mount Sinai fails to show why arbitration in Jackson, Mississippi would be so gravely difficult and inconvenient that it would, for all practical purposes, be deprived of an effective forum. See Bremen, 407 U.S. at 18, 92 S.Ct. 1907. In the absence of a showing that enforcing the forum selection clause would be unreasonable or that the clause is otherwise invalid, we find that the trial court erred in refusing to enforce arbitration in the contractual forum.
Even if we were to apply the Florida International Arbitration Act, §§ 684.01-684.35, Florida Statutes (2001), as urged by the parties, we would reach the same conclusion. Here, the trial court refused to enforce a mandatory forum selection clause, which limited the arbitration forum to Jackson, Mississippi. Cf. Garcia Granados Quinones v. Swiss Bank Corp. (Overseas), S.A., 509 So.2d 273, 275 (Fla. 1987) (forum selection clause that merely consents to jurisdiction and venue in a named forum and does not exclude jurisdiction and venue in another forum is permissive, not mandatory clause). The trial court's decision was based on its determination that the forum selection clause was against public policy, a decision that we review de novo. See Mgmt. Computer Controls v. Charles Perry Constr., Inc., 743 So.2d 627, 630 (Fla. 1st DCA 1999). Mandatory forum selection clauses should be enforced absent a showing that enforcement would be unreasonable or unjust. See Manrique v. Fabbri, 493 So.2d 437, 440 (Fla.1986); Celebrity Cruises, Inc. v. Hitosis, 785 So.2d 521, 522 (Fla. 3d DCA 2000). As discussed above, Mount Sinai failed to make that showing. Thus, the trial court should have enforced the forum selection clause.
Accordingly, we reverse the order compelling arbitration in Florida and remand for arbitration to proceed in Jackson, Mississippi as provided in the insurance contract.
Reversed and remanded with instructions.
NOTES
[1] Benefit provides health insurance coverage to persons and their dependents who are not defacto permanent resident of the United States. The policy defines "defacto country of residence" as the country stated in the application; but notes that if any insured is present in another country for 180 days or more consecutively, that country shall become the person's defacto country of residence for purposes of the policy.
[2] The clause provides in relevant part:

DISPUTES AND LEGAL ACTIONS
Any disputes arising out of this policy, or its alleged breach, may, if not resolved by the parties, be referred to arbitration by either of them. Such arbitration shall be conducted in the City of Jackson, Mississippi, USA, in accordance with Commercial Arbitration Rules of the American Arbitration Association, and judgement on any award rendered in such arbitration may be entered in any state or federal court in such City. Such arbitration shall be the sole remedy for any alleged breach of this policy. Notices in connection with such arbitration and process in any judicial proceeding in connection wherewith may be served by personal delivery or registered mail on the Company at its home office, and on the insured at the most current address appearing on the records of the Company, with the same effect as if personally served in such City.
[3] Specifically, the return policy provision reads:

TEN DAY RIGHT TO RETURN POLICY
If for any reason you are not satisfied with this policy, you may return it to us within 10 days after you receive it. You may return it to us by mail or to the agent who sold it. Then we will refund any premium paid and the policy will be deemed void, just as though no policy had been issued.
[4] There is no indication in the record that Benefit appointed a claims office in Setton's local area in Panama.
[5] Mount Sinai objected to arbitration during the hearing, and thereafter filed a notice objecting to arbitration as proposed by Benefit.
[6] The only portion of the hearing that was transcribed was the court's ruling.
[7] While neither Benefit nor Mount Sinai has specifically raised the applicability of the Federal Arbitration Act, this Court has considered it in making its decision insofar as the facts and arguments presented have bearing on the application of the statute.
[8] Congress has defined commerce, in part, as commerce among the several States or with foreign nations. 9 U.S.C. § 1.
[9] The parochial interests of a state cannot be the measure of how the null and void clause is interpreted. Ledee, 684 F.2d at 187. "The clause must be interpreted to encompass only those situationssuch as fraud, mistake, duress and waiverthat can be applied neutrally on an international scale." Id.
[10] Cases dealing with this last prong usually rely on the parties' citizenship; however, we do not have the benefit of that information and, therefore, we analyze the fourth requirement in terms of the insurance contract's reasonable relation with one or more foreign states.
[11] The parties do not question the scope of the arbitration clause.
[12] There is no evidence to suggest that Setton agreed to the policy terms as a result of fraud or overreaching.