PADOVANO, J.
 

 This is an appeal from a nonfinal order determining that a party is not entitled to arbitration. We hold that the arbitration clause in the insurance policy at issue is clear and unambiguous and that the case law prohibiting arbitration of insurance coverage disputes must give way to the contrary requirements of the Federal Arbitration Act and the Convention governing international arbitration agreements. We therefore reverse.
 

 The present controversy arose from a dispute over insurance coverage for a tort claim. Lars Nettersom died in a marine accident while working aboard a tugboat owned and operated by Mar-K Towing, Inc. His wife, Rebecca, filed a wrongful death suit against Mar-K, alleging that the accident was caused by the poor condition of the vessel and the negligence of the crew.
 

 Mar-K had a maritime insurance policy with Lloyds of London, which it had negotiated with Osprey Underwriting, Lloyds’ agent in London. The policy insured ves-
 
 *735
 
 seis Mar-K operated throughout an area from Savannah, Georgia, to Brownsville, Texas. Lloyds and Osprey declined coverage under the policy or to defend Mar-K in the suit by Mrs. Nettersom. They contended that Mar-K had failed to comply with certain requirements in the policy. Mar-K filed a third-party complaint against Lloyds and Osprey for indemnification.
 

 Lloyds and Osprey filed a motion to compel arbitration under the provisions of the insurance policy. The trial court denied the motion on two grounds. First, the court concluded that the arbitration clause in the policy could not be enforced because it was in conflict with another provision, known as the service of suit clause. Second, the court concluded that Florida law prohibits the arbitration of insurance coverage disputes and that the Florida law on this point takes precedence over contrary, but more general, provisions of the Federal Arbitration Act. Lloyds and Osprey appealed to this court to review the order.
 

 A nonfinal order denying a motion to compel arbitration is subject to review by appeal to the district court of appeal.
 
 See
 
 Fla. R.App. P. 9.130(a)(3)(C)(iv);
 
 Cintas Corp. No. 2 v. Schwalier,
 
 901 So.2d 307 (Fla. 1st DCA 2005). Because the outcome of the dispute in this case depends on an interpretation of the arbitration clause in the insurance policy and the effect of the applicable state and federal laws, the order is reviewable by the de novo standard.
 
 See Florida Title Loans, Inc. v. Christie,
 
 770 So.2d 750 (Fla. 1st DCA 2000).
 

 We conclude that the trial court erred as a matter of law in construing the insurance policy. An ambiguity exists only where contractual terms cannot be reconciled.
 
 See Deni Assocs. of Fla., Inc. v. State Farm Fire
 
 &
 
 Cas. Ins. Co.,
 
 711 So.2d 1135, 1139 (Fla.1998);
 
 See Harris v. School Bd. of Duval County,
 
 921 So.2d 725, 733 (Fla. 1st DCA 2006);
 
 Dune I, Inc. v. Palms N. Owners Ass’n, Inc.,
 
 605 So.2d 903, 905 (Fla. 1st DCA 1992);
 
 Thrasher v. Arida,
 
 858 So.2d 1173, 1175 (Fla. 2d DCA 2003). But where the terms can be reconciled, the clear language of the contract controls.
 
 See Harris,
 
 921 So.2d at 733;
 
 Dune I,
 
 605 So.2d at 905;
 
 Thrasher,
 
 858 So.2d at 1175. When a contract contains apparently conflicting clauses, we must interpret it in a manner that would reconcile the conflicting clauses, if possible.
 
 See Harris
 
 at 733;
 
 Dune I
 
 at 905;
 
 Thrasher
 
 at 1175.
 

 In the contract under consideration here, the arbitration and service of suit clauses serve different purposes and they do not conflict with each another. The arbitration clause provides a method of resolving a dispute between the insurer and the insured. This clause states,
 

 Notwithstanding anything else to the contrary, this insurance is subject to English law and practice and any dispute arising under or in connection with this insurance is to be referred to Arbitration in London, one Arbitrator to be nominated by the Assured and the other by Osprey on behalf of Underwriters. The Arbitration shall be conducted pursuant to exclusive supervision of the English High Court of Justice. In case the Arbitrators shall not agree, then the dispute shall be submitted to an Umpire to be appointed by them. The award of the Arbitrators or the Umpire shall be final and binding upon both parties. In the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail and the right of either party to commence proceedings before any Court or Tribunal in any other jurisdiction shall be
 
 *736
 
 limited to the process of enforcement of any award hereunder.
 

 By this clause the parties plainly agreed to resolve a coverage dispute such as this in an arbitration proceeding in London.
 

 In contrast, the service of suit clause merely provides a method of obtaining a judgment against the insurer in the United States. This clause states:
 

 It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.
 

 An American company purchasing insurance from an international insurance company like Lloyds of London might find this clause to be useful. If a coverage dispute is resolved favorably to the American company in arbitration, the company will be able to sue Lloyds in the United States to enforce the award. Lloyds has subjected itself to a lawsuit in the United States for this purpose and presumably for any purpose other than to resolve a dispute regarding the obligations between the insurer and insured under the policy.
 

 Even if we were to accept the argument that there is a conflict between the service of suit clause and the arbitration clause, we would nevertheless be compelled to hold that the arbitration clause prevails. The last sentence of the arbitration clause states, “In the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail and the right of either party to commence proceedings before any Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder.” This provision plainly signifies that, in the event of a conflict, the arbitration clause should take precedence over the conflicting provision.
 

 The trial court concluded that the arbitration clause would not be enforceable in any event, because Florida law prohibits the arbitration of insurance coverage disputes. The major premise of this conclusion was that state laws regulating the business of insurance take precedence over federal laws that would otherwise require the enforcement of an arbitration agreement. This statement is correct as a general principle, but the error in the trial court’s reasoning is that state laws regulating the business of insurance have a preemptive effect only as to insurance contracts within the United States, and not to international insurance contracts such as the one in this case.
 

 The Federal Arbitration Act, enacted in 1925, 9 U.S.C. §§ 1-14 (2000), establishes a “national policy favoring arbitration,”
 
 Southland Corp. v. Keating,
 
 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1983), placing arbitration agreements “on the same footing as other contracts.”
 
 Green Tree Fin. Corp.-Ala. v. Randolph,
 
 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (quoting
 
 Gilmer v. Interstate/Johnson Lane Corp.,
 
 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). The Act generally takes precedence over state laws on arbitration, including state laws that prohibit or limit arbitration.
 
 See Doctor’s Assocs., Inc. v. Casarotto,
 
 517 U.S. 681, 688, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996);
 
 Allied-Bruce Terminix Cos. v. Dobson,
 
 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
 

 As an exception to the general rule, a state law regulating the business of insurance can operate to preempt the federal law as set forth in the Federal Arbitration Act. This principle of state-law pre
 
 *737
 
 emption has been referred to as “reverse preemption.”
 
 See United Ins. Co. of America v. Office of Ins. Reg.,
 
 985 So.2d 665 (Fla. 1st DCA 2008). It is derived from the McCarran-Ferguson Act, which was designed to “restore the supremacy of the states in the realm of insurance regulation.”
 
 United States Dept. of Treasury v. Fabe,
 
 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). The Act provides in pertinent part that “[n]o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance. ...” 15 U.S.C. § 1012(b).
 
 See Fabe,
 
 508 U.S. at 500-01, 113 S.Ct. 2202.
 

 If the insurance contract had been between a Florida resident and an insurance company within the United States, we would be required to consider the exception in the McCarran-Ferguson Act for laws regulating the business of insurance. But there is an exception to the exception that may apply to some international arbitration agreements. Depending on the legal status of the agreement in this case, the McCarran-Ferguson Act may have no effect on the arbitration clause.
 

 An arbitration agreement between residents of different countries is governed by The New York Convention on the Recognition of and Enforcement of Foreign Arbitral Awards, provided both countries are signatory nations to the Convention. The Convention was drafted in 1958 under the auspices of the United Nations and it has since been incorporated into the Federal Arbitration Act.
 
 See
 
 9 U.S.C. §§ 201-208. If the Convention applies, the issue
 
 is
 
 not merely whether state law prevails over federal law, but whether the right to arbitration is protected by international law.
 

 We adopt the reasoning of the United States District Court for the Northern District of Georgia in
 
 Goshawk Dedicated Ltd. v. Portsmouth Settlement Co.,
 
 466 F.Supp.2d 1293 (N.D.Ga.2006), and hold that the McCarran-Ferguson Act applies only to arbitration agreements within the United States and that it has no effect on an international arbitration agreement that is governed by the Convention.
 
 See also Antillean Marine Shipping Corp. v. Through Transport Mut. Ins. Ltd.,
 
 2002 WL 32075793 (S.D.Fla.2002);
 
 Skuld v. Apollo Ship Chandlers, Inc.,
 
 847 So.2d 991 (Fla. 3d DCA 2003).
 
 [1]
 
 The Federal Arbitration Act must give way to contrary provisions of state laws regulating the business of insurance but, to the extent that the Act incorporates an agreement the United States made with other nations, it prevails over state laws.
 

 This leaves us to ascertain whether the arbitration agreement in the present case is protected by the Convention. The requirements are summarized in
 
 Bautista v. Star Cruises,
 
 396 F.3d 1289, 1294 (11th Cir.2005). There the court held that an international arbitration agreement is enforceable under the Convention if (1) it is in writing; (2) it provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.
 
 See also Polychronakis v. Celebrity Cruises, Inc.,
 
 2008 WL 5191104 (S.D.Fla.2008). All of these elements are
 
 *738
 
 satisfied in the present case. The parties made an agreement in writing to engage in a commercial relationship, that of insurer and insured, and they agreed to arbitrate any disputes under the agreement in England, a country that is a signatory to the Convention.
 

 The trial court was persuaded that Osprey and Lloyds were not entitled to arbitrate the case in London, because Mar-K conducted its business exclusively within the United States. The court pointed out that Mar-K’s vessels operated in coastal ports from Georgia to Texas and that the insurance policy did not provide coverage beyond those areas. This analysis focuses on the relationship between Mar-K and the companies that used its services, not the relationship between the parties to the insurance coverage dispute. The agreement between Osprey and Lloyds in England to insure a risk borne by Mar-K in the United States was an international commercial transaction. Here, as in
 
 Benefit Association v. Mt. Sinai Comprehensive Cancer Center,
 
 816 So.2d 164 (Fla. 3d DCA 2002), the Convention was triggered by the issuance of the insurance policy.
 

 This conclusion is supported by the text of the Convention itself. It states in material part, “An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.” 9 U.S.C. § 202. As this passage reveals, the Convention is put into play by an international commercial transaction. It makes no difference that the business of one of the parties is otherwise a purely domestic operation.
 

 For these reasons, we conclude that the insurance policy requires the parties to arbitrate the dispute, that the Federal Arbitration Act and the Convention apply, and that the provisions of the Act and the Convention are not preempted by state laws regulating the business of insurance. Therefore, we hold that Osprey and Lloyds are entitled to arbitrate the dispute under the insurance policy in London.
 

 Reversed.
 

 BARFIELD and WEBSTER, JJ., concur.
 

 [1]
 

 . The legal arguments supporting the view that the McCarran-Ferguson Act does not apply to international arbitration agreements governed by the Convention are set out in detail in
 
 Law Triangle: Arbitrating International Reinsurance Disputes Under the New York Convention, the McCarran-Ferguson Act, and Antagonistic State Law,
 
 41 Vand. J. Transnat'l L. 1535 (November 2008).