SHEPHERD, J.,
concurring in part, dissenting in part.
I agree with the majority that the former husband, Jorge Luis Riera, cannot be held in contempt for failing to comply with a contractual obligation to pay college expenses. See Nicoletti v. Nicoletti, 901 So.2d 290, 292 (Fla. 2d DCA 2005) (“A contractual duty to pay for a child’s college expenses cannot be enforced by contempt.”); see also Gersten v. Gersten, 281 So.2d 607, 609 (Fla. 3d DCA 1973). However, I would affirm the decision of the *1169 trial court that the former husband is required to pay his aliquot share of his son’s expenses to attend George Washington University.
The former husband contends the agreement contains a latent ambiguity. This is not so. Under Florida law, the initial determination of whether a contract term is ambiguous is a question of law. See Escobar v. United Auto. Ins. Co., 898 So.2d 952, 954 (Fla. 3d DCA 2005); Team Land Dev., Inc. v. Anzac Contractors, Inc., 811 So.2d 698, 699-700 (Fla. Sd DCA 2002). “A latent ambiguity arises when a contract on its face appears clear and unambiguous, but fails to specify the rights and duties of the parties in certain situations.” Jenkins v. Eckerd Corp., 913 So.2d 43, 52-53 (Fla. 1st DCA 2005) (emphasis added); see also Whitfield v. Webb, 100 Fla. 1619, 131 So. 786, 788 (1931). This agreement covers all situations. In the first sentence of paragraph 3.d., the parties agreed to “equally pay for the cost of the minor child’s college tuition, books, supplies and any and all other related expenses.” As the trial court correctly stated, this provision “places no restriction on where the minor child shall attend college.” The second sentence, as understood by the parties, obligated them to purchase a four-year pre-paid college tuition plan, which they did.[2] Applying plain meaning to plain language, it is quite apparent this sentence likewise does not limit the parties’ joint education obligation to the cost of a Florida public college. In fact, savings from a Florida pre-paid college plan can be drawn upon for use at colleges and universities nationwide. See § 1009.98(3), Fla. Stat. (2010).
It is only by allowing itself to fall under the spell of the former husband’s unsworn entreaties and its own surmise that the majority is able to find ambiguity in the agreement. The majority accepts as fact the former husband’s unsworn representation concerning the intent of the parties when they executed the Marital Settlement Agreement. It reads into the agreement something that plainly is not there— that the parties might have meant something other than what they wrote. Then, clenching to other legally irrelevant un-sworn claims of the former husband — a free ride available at a Florida public college, the son’s failure to “consult” with the father about where he should go to college, and the father’s alleged pauperism — the majority reverses the judgment of the trial court so the former husband can seek to re-write the agreement.
It is only if contractual terms cannot be reconciled that a court may look to extrinsic sources to determine the parties’ intent. See Wagner v. Wagner, 885 So.2d 488, 492 (Fla. 1st DCA 2004); see also Lloyds Underwriters v. Netterstrom, 17 So.3d 732, 735 (Fla. 1st DCA 2009) (“[W]here the terms can be reconciled, the clear language of the contract controls.”). In this case, all terms of the agreement are easily reconcilable, if indeed any conflict exists. No unaddressed gaps are left in the duties of the parties for the education of their son, as the majority painfully finds to exist in this case. The plain language of the agreement provides “for the cost of the minor child’s college tuition, books, supplies and any and all other relat *1170 ed expenses.” Books and supplies were not covered by the Florida pre-paid college plan purchased by the parties, and the phrase “other related expenses” expands the parties’ obligation to the son even more.[3]
It might have been that the parties intended to limit the extent of their joint obligation to their son to the purchase of a four-year Florida pre-paid tuition plan. However, the question before us is not what intention existed in the minds of the parties, but what intention is expressed in the language used. See Robbinson v. Central Props., Inc., 468 So.2d 986, 988 (Fla.1985). The unambiguous statement of the parties’ intention in this case was to “equally pay for the cost of the minor child’s college tuition, books, supplies and all other related expenses.” We should enforce the agreement if the former husband has the ability to pay.[4]

. The parties purchased what then was known as a four-year "University Plan.” The plan covered tuition for a specified number of undergraduate semester credit hours, not to exceed the average number of hours required for the conference of a baccalaureate degree, and certain local fees, such as activity and service fees, but excluding laboratory fees. See § 240.551, Fla. Stat. (1992); Fla. Admin. Code 6A-14.054 (1992). It did not cover books, supplies or "other related expenses.” Nor does such a plan do so today. See § 1009.98(2)(b) 1, Fla. Stat. (2012); Fla. Admin. Code 19B-5.001 (2012).

. The interpretive principle involved here is the doctrine of ejusdem generis. "Under this doctrine, where an enumeration of specific things [i.e. "college tuition, books, supplies”] is followed by some more general word or phrase [i.e. “any and all other related expenses”], the general phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated ... [unless the enumeration of specific things] is exhaustive of members of the class in question. ...” See Brown v. Saint City Church of God of Apostolic Faith, Inc., 717 So.2d 557, 559 (Fla. 3d DCA 1998) (applying doctrine to limit the phrase "or other materials of any kind” in statute prohibiting the throwing of "waste” on public streets to mean “or any other waste-like or litter-like material of any kind” and not gravel placed in swale to create parking area for church goers); see also Tiny Treasures Acad. & Get Well Ctr., Inc. v. Stirling Place, Inc., 916 So.2d 991, 994 (Fla. 4th DCA 2005) (applying doctrine to limit the phrase "damages to the premises” to "similar physical damages to premises” and not lost rent); Stuart Sportfishing, Inc. v. Kehoe, 541 So.2d 169, 170 (Fla. 4th DCA 1989) (finding restaurant and raw bar did not fit into "light marine related business such as marine electronics, sales of new and used boats, ships store, marine canvas, bait shop, and/or similar ones which would be permitted under the current zoning of the property” under doctrine) (emphasis added).

. Ability to pay has been found to be an implied component of reasonableness when deciding the reasonableness of a college tuition amount. See Carlton v. Carlton, 670 So.2d 1129, 1130 (Fla. 2d DCA 1996). The length of time the obligation exists also should be subject to a reasonableness standard. See Fox v. Haislett, 388 So.2d 1261, 1266 (Fla. 2d DCA 1980) ("[A] provision requiring a father to pay tuition, with no limitation expressed, should be construed to require the payment of tuition in a reasonable amount.”).