HOUDAILLE INDUSTRIES, INC., etc.,
Plaintiff-Appellee,

v.

UNITED BONDING INSURANCE COM-
PANY, Defendant-Appellant.

No. 30076.

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1972.

Rehearing Denied Feb. 8, 1972.

Harry Kemker, William C. Frye, Tampa, Fla., Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., for defendant-appellant.

S. William Goldstein, Goldstein & Goldstein, Jacksonville, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

United is the surety on three bonds, identical except as to amount, made in 1968 by Pinellas Construction Co., a contractor, as principal, and each with two obligees, Kalmia Apartments, Inc., owner, and Home Federal Savings & Loan Association, lender. Each pertained to a separate contract by Pinellas, also executed in 1968, to construct an apartment building for Kalmia in the State of Florida. The construction jobs were not public works.

Houdaille, a subcontractor, sued United on the bonds in Florida state court, alleging that it had furnished labor and materials to Pinellas in the construction of the three buildings and had not been paid. It is undisputed that Houdaille did not perfect a mechanic's lien on any of the three jobs. United removed to the United States District Court for the Middle District of Florida.

Since the bonds are identical, we discuss them in the singular. It contained the following condition:

> [I]f Principal shall . . . complete the work . . . and keep it free of liens for labor or material furnished in connection therewith, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:
>
> * * * * * *
>
> 4. . . . No right of action shall accrue on this bond to or for the use or benefit of any person . . . other than the named Owner and Lender.

These conditions would appear to prevent recovery, because the bond did not refer to payment for labor or materials but to keeping the property free of liens, and Houdaille did not allege that it had perfected or was entitled to a lien. Also the terms limited causes of action on the bond to owner and lender, and Houdaille was neither. Houdaille amended its complaint with the allegation that the bond was intended to comply with a certain construction contract, which was incorporated into the bond and which required that a payment and performance bond be given; that it was intended to comply with the payment bond provision of the Florida Mechanics' Lien Law, F.S.A. § 713.23; and that it was intended to comply with the Florida Insurance Code, F.S.A. § 627.0905.

Each construction contract provided that "a performance and payment bond will be furnished by the Contractor." And the bond provided that the construction contract "is hereby referred to and made a part hereof."

Houdaille moved for summary judgent and filed affidavits establishing the furnishing of the materials and the lack of payment. United filed affidavits that the intent of the bond was to assure the physical completion of the work and to protect only Kalmia as owner and Home Federal as lender. The motion for summary judgment was granted without explanation or statement of reasons.[1] United appeals, and we affirm.

Decision involves a complex interplay of Florida statutes and amendments thereto and Florida case law. While not required by Rule 56, F.R.Civ.P., a statement of reasons or opinion by the experienced Florida federal District Judge would have been of great assistance to this court. *See* Mallary v. United States, 238 F.Supp. 87 (M.D.Ga. 1965); Prudential Ins. Co. of America v. Goldstein, 43 F.Supp. 767 (E.D.N.Y. 1942).

We commence our examination of the statutes with F.S.A. § 627.0905, found in the chapter of the Insurance Code headed "Rates and Contracts," Part XI, "Surety Insurance Contracts," which provides:

> (1) Whenever a surety insurer becomes a surety on a contract bond or bonds for either private or public construction in this state, such bond or bonds shall be either:
>
> (a) A combination bond containing both performance and payment provisions and in an amount not less than the total or estimated contract price, or
>
> (b) Separate bonds for performance and for payment, but in such instances both bonds shall be issued and each shall be in an amount not less than fifty per cent of the total or estimated contract price.
>
> * * * * * *

Prior to amendment of the Mechanics' Lien Law in 1963, discussed below, the Florida courts construed § 627.0905 as

---

1. Conflict between the affidavits and the amended complaint as to the alleged purposes to be served by the bond did not require denial of the motion for summary judgment. Under the view we take of this dispute, these differing versions were legally immaterial.

not requiring a payment bond in the sense of obligation of the surety to pay any and all parties for labor or materials furnished in connection with the performance of the contract. In American Fire & Cas. Co. v. Martin Marietta Corp., 171 So.2d 435 (Fla.App.1965), a pre-1963 bond bound the surety to the owner "as well as to all persons who may become entitled to liens under the contract. . . ." Martin Marietta did not claim to be entitled to a lien because, as a supplier to a sub-subcontractor, it was not protected under the Florida Mechanics' Lien Law as it then existed, but it asserted that § 627.0905, when read into the bond, obligated the surety to pay it for the material supplied. This the court rejected, holding that the section only mandated uniformity of contractors' bonds by requiring them to be in one or the other alternative, and fixing the amount of each, and did not write into contractors' bonds a requirement that the bond be for the use and benefit of persons not entitled to a lien. *Accord,* American Fire & Cas. Co. v. Charles Sales Corp., 203 So.2d 670 (Fla. App.1967) (post-1963 bond given by subcontractor to contractor).

Even for those entitled to liens, the road to recovery on the contractor's bond was not always free from insurmountable obstacles. In Johnson Electric Co. v. Columbia Cas. Co., 101 Fla. 186, 133 So. 850 (1931) a material supplier to the contractor was held to have standing to sue on the contractor's bond, despite absence of any reference to the bond's being for the benefit of materialmen, where the contract between owner and contractor called for a bond "for the protection of subcontractors and those furnishing labor and/or materials

and/or supplies, to the contractor on this work." *See also* American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930). The *Johnson* decision was sharply limited in Aetna Ins. Co. v. Estero Mfg. and Builders Supply, Inc., 174 So.2d 747 (Fla.App.1965). Pursuant to F.S.A. § 84.05(11), in effect prior to October 1, 1963, the owners of a motel required of the contractor building an addition a surety bond conditioned on faithful performance and payment of all claims for material furnished in the prosecution of the work. The court upheld refusal to entertain an unsatisfied subcontractor's suit on the bond, stating that the bond provision limiting a right of action thereon to the owners took the subcontractor from underneath the umbrella of *Johnson* protection.

Section 84.05(11), the only provision in the Mechanics' Lien Law for surety bonds at the time the *Estero* bond was written, stated that if a direct contract called for expenditure in excess of $3000 an owner could require a surety bond conditioned to pay all laborers, subcontractors and materialmen. The statute neither gave persons so situated a direct right of action on the bond nor prohibited provision in the bond limiting the right of action thereon to the owner.

Were this the present state of the law, we would be compelled to reverse on the basis of *Estero.* But in 1963 the Mechanics' Lien Law was amended by the addition of what, with one change in 1965 not relevant here, is now § 713.23, which we set out in full in the margin.[2] This materially liberalized the scope of protection of persons supplying labor or materials. United Bonding Ins. Co. v. M. D. Moody

2. *"Payment bond*
    "The payment bond required to exempt an owner under parts I and II of this chapter and chapter 85 shall be furnished by the contractor in at least the amount of the original contract price before commencing the construction of the improvement under such direct contract. Such bond shall be executed as surety by a surety insurer authorized to do business in

    Florida and shall be conditioned that such contractor shall promptly make payments to all persons supplying him labor, material and supplies used directly or indirectly by said contractor, subcontractor or subsubcontractor in the prosecution of the work provided in said contract. The owner, contractor, or surety, parties or obligees under any such bond, shall furnish a true copy at cost of reproduction thereof

& Sons, Inc., 213 So.2d 263 (Fla.App. 1968). That section requires a condition in "the payment bond required to exempt an owner under . . . [The Mechanics' Lien Law]" "that such contractor shall promptly make payments to all persons supplying him labor, material and supplies used directly or indirectly by said contractor, subcontractor or subsubcontractor in the prosecution of the work provided in said contract." No notice of the furnishing of labor or materials to the contractor himself need be given, since he will have knowledge of it, but provision is made for notice to the contractor by one supplying labor, material or supplies "used directly or indirectly in the prosecution of the work to any subcontractor or subsubcontractor." Also the class of persons who may sue is broadened: "Any lienor shall have direct right of action on such bond against the surety and no such bond shall contain any provisions restricting the classes of persons protected thereby . . ." "Lienor" does not mean one who has perfected his lien but one who is entitled to the benefits of the Mechanics' Lien Law regardless of whether he has taken steps to perfect. F.S.A. § 713.01(10); Crane Co. v. Fine, 221 So.2d 145, 150–151 (Fla.Sup.1969). A copy of the bond must be furnished to any lienor demanding the same.

■ United makes no contention to us that these interpretations of § 713.23 are incorrect, but takes the position that a § 713.23 bond is not mandatory on private construction. We agree, to the extent that it is not mandatory for the private owner to require a bond to protect lien claimants. The Mechanics' Lien Law as a whole, and especially the provision in § 713.23 that "the payment bond required to exempt an owner under . . . [the Mechanics' Lien Law] . . .", indicates that a bond may be utilized to provide the protection otherwise afforded by a lien. Section 713.02, headed "Types of lienors and exemptions", provides that in any direct contract the owner may require the contractor to furnish a payment bond as provided in § 713.23 and upon receipt of such bond the owner shall be exempt from the Mechanics' Lien Law. Section 713.13(1) (a) requires the filing of a notice of commencement "whether or not a project has a payment bond complying with § 713.23." Section 713.13(1) (e) requires that notice include "the name and address of the surety on the payment bond under § 713.23, if any, and the amount of such bond."

to any lienor demanding the same and if any such person fails or refuses to furnish such copy without justifiable cause, he shall be liable to the lienor demanding the copy for any damages caused to such lienor by such refusal or failure. Any person supplying labor, material or supplies used directly or indirectly in the prosecution of the work to any subcontractor or subsubcontractor and who has not received payment therefor, shall, within ninety days after performance of the labor or after complete delivery of materials and supplies, deliver to the contractor written notice of the performance of such labor or delivery of such materials and supplies and the nonpayment therefor, and no action or suit for such labor or for such materials and supplies may be instituted or prosecuted against the contractor unless such notice has been given. No action or suit shall be instituted or prosecuted against the contractor or against the surety on the bond required in this section after one year from the performance of the labor or completion of delivery of the materials and supplies. Any lienor shall have direct right of action on such bond against the surety and no such bond shall contain any provisions restricting the classes of persons protected thereby or the venue of any suit thereon. The surety shall not be entitled to the defense of pro tanto discharge as against any lienor because of changes or modifications in the contract to which the surety is not a party; provided that the liability of the surety shall not be increased beyond the penal sum of the bond. Except claimants in privity with the contractor and except laborers, no claimant shall recover on a bond or from the contractor unless he shall have complied with the provisions of § 713.06(2)."

F.S.A. § 713.23.

**1052**

But we reject the theory that if the private owner rather than remaining subject to the lien laws chooses the alternative of a bond which protects against liens he may employ a bond other than a § 713.23 bond. It would subvert the effect of the 1963 amendment to allow two types of bonds safeguarding against liens on private work, a statutory bond in compliance with that section protecting a broadened class of persons described therein and exempting the owner from the entire mechanics' lien procedures, and a nonstatutory bond conditioned on keeping the property free of a narrower class of obligations and on which suit may be brought only by owner or lender. This would perpetuate outside of § 713.-23 the type of bond provided for prior to the amendment of the statute.

This case demonstrates the desirability of rejecting the surety's approach. The contract requires a "payment bond." The title and subject matter of § 713.23 are "payment bond." But the surety has produced affidavits of its agents that the instant bond was intended only to assure the physical completion of the work and to protect owner and lender against loss caused by the contractor.[3] We bear in mind that in this diversity case we stand in the stead of the Florida state court and are therefore bound to construe § 713.23 liberally "so as to afford the laborers and materialmen the greatest protection compatible with justice and equity," Hendry Lumber Co. v. Bryant, 138 Fla. 485, 189 So. 710 (1939). We find it is inconsistent with the aims of the Mechanics' Lien Law and the statutes allowing a bond in lieu of exposure to liens that the supplier to one other than the contractor be left in doubt and uncertainty as to whether he may rely on the bond or must perfect his lien, or to be completely safe must comply with conditions precedent to protect his rights under both routes, and if he chooses only the bond route then face the risk of oral testimony that the bond was intended to have an operative scope different than he thought.

We conclude that if the surety on private construction work issues a bond that purports to protect against mechanics' liens it must be construed and applied in accordance with the conditions and provisions of § 713.23. Our conclusions is buttressed, if not required, by two other sections of the Insurance Code, § 627.0117 and § 627.0111.

627.0117 *Validity of noncomplying contracts*

(1) Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this code, shall not be thereby rendered invalid . . . but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code.

\* \* \* \* \* \*

627.0111 *Standard provisions, in general*

(1) Insurance contracts shall contain such standard or uniform provisions as are required by the applicable provisions of this code pertaining to contracts of particular kinds of insurance. . . .

\* \* \* \* \* \*

Both §§ 627.0117 and 627.0111 are found in the same chapter of the Insurance Code as § 627.0905, but in a different part, Part II, entitled "The Insurance Contract." Section 627.01001 defines the scope of Part II by excluding from its application certain types of insurance. Surety insurance is not excluded.

3. Our decision does not rest on insufficiency of the affidavits but on their irrelevance. Nevertheless we note that neither affidavit contains any reference to the word "lien," or specifically to the phrase in the bond that the principal must keep the property "free and clear of liens for labor or material furnished in connection [with the work]."

Lest there by any doubt, a surety bond is included within the definition of insurance. *See* § 624.0405, "Surety Insurance Defined," found in the Insurance Code chapter headed "Administrative and General Provisions", Part V, "Kinds of Insurance; Limits of Risk; Reinsurance."

In American Fire & Cas. Co. v. Martin Marietta Corp. *supra,* the Florida court said that § 627.0905 "did not purport to and does not have the effect of writing into such bonds a requirement that the bond shall be for the use and benefit of persons who are not entitled to a lien under Ch. 84, Fla.Stats., as in effect prior to October 1, 1963." The plain implication is that § 627.0905 does have such effect when the person suing is entitled to a lien. The inference we draw is strengthened when we note the care taken by the court to limit its decision to pre-1963 lien law and when we recall that *Martin Marietta* was written in light of the liberalizing amendments to the Mechanics' Lien Law that already had been put into effect. The language in these circumstances conveys to us an intent to restrict the narrow construction placed by the court on § 627.0905 to the framework of law existing when the bond in question was written.

State of Florida for Use and Benefit of Westinghouse Elec. Supply Co. v. Wesley Constr. Co., 316 F.Supp. 490 (S.D.Fla.1970), does not persuade us to reach a different result. Wesley, as prime contractor, furnished to Florida Power & Light, as owner, a surety bond written by Aetna. The bond was conditioned that Wesley perform its obligations free and clear of all liens aris-ing out of claims for labor and material and that it "pay all persons who shall have furnished labor or material directly to the Principal for use in the prosecution of the aforesaid work, each of which said persons shall have a direct right of action on this instrument in his own name and for his own benefit . . . ." Westinghouse, supplier of materials to a subcontractor, sued on the bond, contending it was a bond covered by § 713.23 and that the bond restriction which prohibited it from suing the surety was invalid. The court held held against Westinghouse, concluding first that the bond was not a § 713.23 bond because it did not comply with the mandatory provision of the statute that requires such bonds to be unrestricted as to the classes of persons who are protected thereby, and secondly that even if the bond were in compliance with § 713.23 Westinghouse would have no rights thereunder because it had failed to deliver the requisite written notice to the contractor within the period allowed, which is a condition precedent to the prosecution of any action on that type bond. The first ground for the court's conclusion appears contrary to the result we have reached. *Wesley* concerned five different theories for recovery based on two contracts and two bonds, and it does not appear that the District Judge considered the complex history of statutes and cases that we have outlined. In light of the second ground which fully disposed of the Westinghouse contention, we disregard the first as unnecessary. With regard to the second ground, no similar failure of condition has been raised in this case.[4]

Affirmed.

4. United alleged in its answer that there was a failure of condition precedent in that the owner had not fulfilled its contractual obligations to the contractor, principal on the bond. Florida has held that even a default by the owner that prevented the contractor from paying a materialman, so long as it is not participated in or authorized by the materialman, does not defeat the latter's right to recover against the surety on the bond. Fidelity & Cas. Co. v. Plumbing Dep't Store, Inc., 117 Fla. 119, 157 So. 506 (Fla.Sup.1934); United Bonding Ins. Co. v. Atlantic Roofing & Sheet Metal Co., 221 So.2d 461 (Fla.App. 1969). See generally 17 Am.Jur.2d Contractors' Bonds § 16 (1964). Even if the alleged failure could be proved, it would not bar recovery.