DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE KIDWELL GROUP, LLC,** d/b/a **AIR QUALITY ASSESSORS OF FLORIDA,** a/a/o **JOSE LINARES** and **CELIA LINARES,**
Appellant,

v.

**SAFEPOINT INSURANCE COMPANY,**
Appellee.

No. 4D2022-2806

[December 20, 2023]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Tabitha Blackmon, Judge; L.T. Case No. COINX-22-027241.

Larry Moskowitz of Larry Moskowitz, P.A., Fort Lauderdale, for appellant.

Patrick M. Chidnese and Frieda C. Lindroth of Bickford & Chidnese, LLP, Tampa, for appellee.

LEVINE, J.

The trial court dismissed a claim filed by appellant, as assignee of benefits under a homeowner's insurance policy, for breach of contract against appellee, the insurer, finding that an invoice failed to satisfy section 627.7152(2)(a), Florida Statutes (2021), because the invoice was unexecuted. Section 627.7152(2)(a) requires that an assignment agreement be executed and contain an itemized, per-unit cost estimate of the services to be performed. We find that, taking the allegations in the amended complaint as true, as required when considering a motion to dismiss, the invoice was provided with, and fully incorporated into, the executed assignment agreement. Thus, for purposes of ruling on the motion to dismiss, the invoice should have been treated as part of the executed assignment agreement, and the trial court erred by finding that the invoice should have been separately executed. Accordingly, we reverse and remand for further proceedings.

Appellant sued the insurer for breach of contract for failure to pay a $3,000 claim. The amended complaint alleged that appellant and the insureds entered into an assignment agreement for "forensic engineering services with incorporated written, itemized, per unit cost invoice in the amount of $3,000." An assignment agreement and an invoice, both dated December 29, 2021, were attached to the amended complaint.[1] The assignment agreement stated that "an itemized per unit cost estimate/invoice has been provided with this contract and is fully incorporated herein." The assignment agreement contained a "Good Faith Itemized Per-Unit Cost Estimate" with a list of services and costs with a checkmark next to one service: "Engineer Report with Repair Plan = $3,000+." The invoice contained a price of $3,000 for an "Engineer Report from State Licensed Professional Engineer."

The insurer moved to dismiss, arguing the separate invoice was not executed and did not satisfy section 627.7152(2)(a), Florida Statutes (2021). In support, the insurer relied on *Kidwell Group, LLC v. United Property & Casualty Insurance Co.,* 343 So. 3d 97 (Fla. 4th DCA 2022). Appellant responded that the signature on the assignment agreement complied with the statute and that the invoice was contemporaneous with and part of the assignment agreement.

The trial court dismissed the amended complaint with prejudice, stating:

> The invoice attached to the amended complaint is unexecuted by the assignor and therefore fails to comply with F.S. 627.7152. This Court is bound by the 4th DCA's decision in The Kidwell Group, LLC, d/b/a Air Quality Assessors of Florida a/a/o Ben Kikovitz v. UNITED PROPERTY & Casualty Insurance Company, 343 So. 3d 97 (4th DCA 2022), where the Court held, in part, that an unexecuted invoice is invalid.

Appellant argues the trial court erred in failing to construe the invoice as part of the assignment agreement where the assignment agreement stated that "an itemized per unit cost estimate/invoice has been provided with this contract and is fully incorporated herein." The insurer responds that this statement did not incorporate the invoice by reference; rather, it referred to a different document, that being the "Good Faith Itemized Per-Unit Cost Estimate."

---

[1] The assignment agreement is attached to this opinion as Appendix 1, and the invoice is attached as Appendix 2.

An order granting a motion to dismiss is reviewed de novo. *Rhiner v. Koyama*, 327 So. 3d 314, 316 (Fla. 4th DCA 2021). Issues of statutory interpretation are also reviewed de novo. *Therlonge v. State*, 184 So. 3d 1120, 1121 (Fla. 4th DCA 2015).

"A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party." *The Fla. Bar v. Greene*, 926 So. 2d 1195, 1199 (Fla. 2006). When ruling on a motion to dismiss, the trial court is limited to the four corners of the complaint, including the exhibits attached to it. *Haslett v. Broward Health Imperial Point Med. Ctr.*, 197 So. 3d 124, 127 (Fla. 4th DCA 2016).

Pursuant to section 627.7152, Florida Statutes (2021), an assignment agreement must comply with certain requirements. Pertinent to the issue on appeal, an assignment agreement must "[b]e in writing and executed by and between the assignor and the assignee" and "[c]ontain a written, itemized, per-unit cost estimate of the services to be performed by the assignee." § 627.7152(2)(a)(1), (4), Fla. Stat. (2021). "An assignment agreement that does not comply with this subsection is invalid and unenforceable." § 627.7152(2)(d), Fla. Stat. (2021).[2]

In the instant case, at this juncture, the trial court erred in failing to construe the invoice as part of the assignment agreement. The amended complaint alleged that appellant and the insureds entered into an assignment agreement for "forensic engineering services *with incorporated* written, itemized, per unit cost *invoice* in the amount of $3,000." (emphasis added). Both the assignment agreement and invoice were attached to the amended complaint, and both were dated December 29, 2021. Additionally, the assignment agreement stated that "an itemized per unit cost estimate/*invoice* has been *provided with* this contract and is *fully incorporated* herein." (emphasis added).

Taking the allegations in the amended complaint and attachments thereto in a light most favorable to appellant, the invoice was provided with, and fully incorporated into, the assignment agreement. "It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of

---

[2] For insurance policies issued after January 1, 2023, the Florida Legislature has declared all assignments to be void, invalid, and unenforceable. § 627.7152(13), Fla. Stat. (2023).

the writing." *OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990). Because the invoice was incorporated into the executed assignment agreement, the invoice did not need a separate signature in order to withstand a motion to dismiss. *See Cavallaro v. Stratford Homes, Inc.*, 784 So. 2d 619, 622 (Fla. 5th DCA 2001) (stating that "[i]n order for documents to be read in conjunction with each other . . . , there must be some reference to the unsigned writing in the signed writing") (citation and internal quotation marks omitted); *First Guar. Corp. v. Palmer Bank & Tr. Co. of Fort Myers, N.A.*, 405 So. 2d 186, 188 (Fla. 2d DCA 1981) ("[S]everal writings, only one of which is signed, may be aggregated . . . , provided the signed writing expressly or implicitly refers to the unsigned document.").

The trial court's reliance on *Kidwell* was misplaced because, in that case, the invoice was dated five days after the assignment agreement, and there was no allegation in *Kidwell* that the invoice was incorporated into the assignment agreement. 343 So. 3d at 98. Here, in contrast, the invoice and assignment agreement were dated the same day, and appellant alleged the assignment agreement incorporated the invoice.

The insurer advances two alternative grounds for affirmance. First, the insurer argues that the assignment agreement and invoice were generic and did not describe specific services. The cases the insurer relies on are distinguishable because those cases involved only a general list for services that could be performed, without any indication of what services were estimated to be performed. *See Total Care Restoration, LLC v. Citizens Prop. Ins. Corp.*, 357 So. 3d 1260 (Fla. 3d DCA 2023); *Air Quality Experts Corp. v. Family Sec. Ins. Co.*, 351 So. 3d 32 (Fla. 4th DCA 2022). In contrast, here the service was sufficiently detailed because it listed a single service of an engineer report with an estimated cost of $3,000. *See MVP Plumbing, Inc. v. Citizens Prop. Ins. Corp.*, 359 So. 3d 885, 885 (Fla. 3d DCA 2023) (finding a service sufficiently detailed where "the assignment expressly contemplated appellant would perform a single service, a pipe inspection, for the estimated cost of $750").

Second, the insurer argues that the preparation of a report is not a covered loss. However, this not an issue that can be resolved at the motion to dismiss stage of the proceedings. Whether the engineering report falls within the scope of the policy depends on whether it was used for the repair or replacement of the damaged property. *See People's Tr. Ins. Co. v. Kidwell Grp., LLC*, 363 So. 3d 1108 (Fla. 4th DCA 2023) (resolving at trial the issue of whether an engineering report for $3,500 was a covered loss under the policy).

4

In summary, because at this juncture the invoice should have been considered as part of the executed assignment agreement, the invoice did not require a separate execution to satisfy section 627.7152(2)(a). As such, we reverse the dismissal and remand for further proceedings.

*Reversed and remanded for further proceedings.*

MAY and ARTAU, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

# APPENDIX 1



AIR QUALITY ASSESSORS

UCN: 062018CP       AUTICE

P.O. Box 162261, Altamonte Springs, FL 32716
**Office**: (407) 233-0493 - **Fax**: (407) 674-2528
**Email**: info@AirQualityAssessors.com
Florida Licensed Mold Assessors MRSA2096
Florida Licensed Engineering Firm C.O.A 31993

| CUSTOMER INFO | | | | | |
|---|---|---|---|---|---|
| Client Name: | Jose Linares | | | Date: | 12/29/21 |
| Address: | ███████ | City: | North Lauderdale | Zip: | 33068 |
| Home Phone: | ████ | Cell Phone: | ████ | Email: | |
| Insurance Company: | Safe Point insurance company | | | Date of Loss: | 06/14/21 |
| Policy #: | ████ | | Claim #: | ████ | |

## CONTRACT FOR SERVICES

I, the Homeowner/Insured, and/or its representative for the property listed above (hereinafter "Client"), authorize Air Quality Assessors of Florida, its subcontractors and/or assignees (hereinafter collectively referred to as "AQA"), to enter said property to perform assessment services, including but not limited to indoor environmental assessments, asbestos testing, engineering inspections and post-mitigation verification. Client and AQA hereby acknowledge that the services to be provided are NOT being provided in an urgent or emergency circumstance as defined by 627.7152. Client agrees to fully cooperate with insurance company as required by the subject policy of insurance and comply with all post-loss duties required by same. Clients understands that the assessment services to be rendered are directly related and necessary as a result of the above-referenced loss and that it should provide a copy of any report prepared by AQA to its repair contractors to ensure a complete and proper repair of the damage to the subject property and to obtain any necessary building permits.

## ASSIGNMENT OF INSURANCE CLAIM BENEFITS & DIRECT PAY AUTHORIZATION

Client hereby assigns any and all insurance rights, benefits, and proceeds under my property insurance policy up to the invoiced amount of the services provided or to be provided by AQA regardless of the insurance company's determination as to scope, pricing and/or coverage of AQA's services. Client also hereby instructs and directs my insurance carrier to make a separate and individual payment to be sent directly to AQA or its representatives for their services in relation to the claim. Client makes this assignment and authorization in consideration of AQA's agreement to perform services and otherwise perform its obligations under this contract, including not requiring full payment at the time of service. AQA shall provide a copy of the executed assignment agreement to the named insurer within 3 business days after the date on which the assignment agreement was executed or the date on which work begins, whichever is earlier. Delivery of the copy of the assignment agreement to the insurer shall be made by one of the methods stated in Fla. Stat. § 627.7152. Client also hereby instructs my insurance carrier to release any and all information requested by AQA, its representative, or its attorney solely for the direct purpose of obtaining actual benefits to be paid by my insurance carrier for services rendered or to be rendered. Client hereby assigns all legal rights to recover any and all insurance proceeds owed by my insurance company regarding this loss, including but not limited to the right to bring appropriate legal action up to the amount owed for the services rendered by AQA. AQA shall be entitled to any and all recovery of costs, and attorney's fees associated with the collection of the invoiced amount(s) from Client's Insurance Company as provided for under Fla. Stat. § 627.428, § 626.9373 and/or § 627.7152, and any other method afforded under Florida Law. Client has the right to rescind the assignment agreement without a penalty or fee by submitting a written notice of rescission signed by Client to AQA within 14 days after the execution of the agreement, at least 30 days after the date work on the property is scheduled to commence if AQA has not substantially performed, or at least 30 days after the execution of the agreement, if the agreement does not contain a commencement date and the assignee has not begun substantial work on the property. For the purposes of this agreement, AQA shall be deemed to have done substantial work once it has begun a visual inspection of the property. Should Client rescind this assignment of benefits during the statutory period, the invoiced amount shall be immediately due and owed.

## PAYMENTS, TERMS & INTEREST

If for any reason payment is made to the Client by an insurer for the services provided by AQA under this contract, it shall be endorsed over to AQA within three (3) business days. Client agrees that any portion of work, deductibles, betterment, depreciation, or additional work requested by the undersigned, not covered by insurance, must be paid by the undersigned on or before its completion. Payment terms to AQA are net-30 days. In the event that legal or collection agency proceedings must be instituted to recover any amount due, AQA shall be entitled to recover the cost of collections, including collection agencies, attorney's fees and costs, plus a finance charge of 1.5% per month applicable to all amounts due from the insurer. In exchange for this assignment of benefits, AQA agrees to indemnify and hold harmless Client from all liabilities, damages, losses, and costs, including but not limited to attorney fees or collection costs. A service is deemed "not covered by insurance" only if determined as such by a Court of competent jurisdiction. Client irrevocably appoints AQA as its attorney-in-fact, authorizing AQA to endorse my name and to deposit insurance checks or drafts for AQA for the services rendered.

## ACKNOWLEDGEMENT

I have carefully read the preceding paragraphs and fully understand and agree with the limitations, exclusions, and terms described therein. This agreement does not obligate the client to AQA in any way, unless the insurance provider approves the claim, or a court of competent jurisdiction orders the insurance carrier to provide coverage and payment for the damage(s) suffered by the client. Unless additional work is requested, AQA agrees the services will be completed with no upfront cost to the client. Client has read and understand the information above and have received a copy for my records. This contract is intended to be legally binding and contains all of the terms and conditions between the parties. Client expressly states that he/she has read the statutorily required notice as proscribed in Fla. Stat. § 627.7152(2)(a)(6), which is printed on the reverse side of this document and is incorporated herein by reference. Client & AQA hereby acknowledge that an itemized per unit cost estimate/invoice has been provided with this contract and is fully incorporated herein.

| | | | |
|---|---|---|---|
| Client Signature: | _Jose Linares_ | Date: | 12/29/21 |
| Print Name: | Jose Linares | | |
| AQA Signature: | _Matthew Moore_ As Authorized Representative for Air Quality Assessors of Florida (AQA) | | |
| AQA Print Name: | Matthew Moore - As Authorized Representative for Air Quality Assessors of Florida (AQA) | | |

6

**GOOD FAITH ITEMIZED PER-UNIT COST ESTIMATE** (THIS IS ONLY AN ESTIMATE, THE FINAL INVOICE MAY DIFFER)

Water Damage Assessment with Category Determination = $1500  Mold Assessment with Sampling = $1000  Additional Mold Samples = $125

Post Remediation Verification Report = $800

Asbestos Sampling with Report = $500  Asbestos Sample per = $150  Lead Samples per = $150

Water Damage Assessment with Category Determination with Bacteria Sampling = $1500 plus $125 per Bacteria Sample

✓ Engineer Report with Repair Plan = $3000 +

Leak Detection Report = $1500

Fire, Soot, Char, Ash Sampling with Report = $300 per sample (on top of the damage assessment fee)

Formaldehyde Samples = $350 Air Sample or $500 Bulk Sample  VOC per Sample = $350  (on top of the damage assessment fee)

## DEFINITIONS

Assessment: A process performed by an indoor environmental professional (IEP) that includes the evaluation of data obtained from a building history and inspection to formulate an initial hypothesis about the origin, identity, location, and extent of contamination. If necessary, a sampling plan is developed, and samples are collected and sent to a qualified laboratory for analysis. The subsequent data is interpreted by the IEP. Then, the IEP, or other qualified individual, may develop a remediation plan. Reference, ANSI/IICRC S500-2015
- Standard and Reference Guide for Professional Water Damage Restoration 4th Edition

Mold Assessment: A process performed by a mold assessor that includes the physical sampling and detailed evaluation of data obtained from a building history and inspection to formulate an initial hypothesis about the origin, identity, location, and extent of amplification of mold growth of greater than 10 square feet. Florida Statute section 468.8411

Indoor Environmental Professional (IEP): An individual with the education, training, and experience to perform an assessment of the microbial ecology of structure, systems and contents at a job site, create a sampling strategy, sample the indoor environment and submit to an appropriate laboratory, interpret laboratory data and determine category of water or condition 1, 2, or 3 for the purpose of establishing a scope of work and verifying the return to a normal microbial ecology (e.g., Condition 1). Reference, ANSI/IICRC S500-2015 - Standard and Reference Guide for Professional Water Damage Restoration 4th Edition

Forensic Engineering has been defined as "the investigation of failures - ranging from serviceability to catastrophic - which may lead to legal activity, including both civil and criminal". It, therefore, includes the investigation of materials, products, structures or components that fail or do not operate or function as intended, causing personal injury, damage to property, or economic loss.

Post-Mitigation Verification: An assessment of a mitigated property by an IEP in order to verify that the mitigation was properly done in accordance with Industry Standards as set forth in the ANSI/IICRC S500 (2015) and Florida Statutes section 627.7152.

**YOU ARE AGREEING TO GIVE UP CERTAIN RIGHTS YOU HAVE UNDER YOUR INSURANCE POLICY TO A THIRD PARTY, WHICH MAY RESULT IN LITIGATION AGAINST YOUR INSURER. PLEASE READ AND UNDERSTAND THIS DOCUMENT BEFORE SIGNING IT. YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT WITHOUT PENALTY WITHIN 14 DAYS AFTER THE DATE THIS AGREEMENT IS EXECUTED, AT LEAST 30 DAYS AFTER THE DATE WORK ON THE PROPERTY IS SCHEDULED TO COMMENCE IF THE ASSIGNEE HAS NOT SUBSTANTIALLY PERFORMED, OR AT LEAST 30 DAYS AFTER THE EXECUTION OF THE AGREEMENT IF THE AGREEMENT DOES NOT CONTAIN A COMMENCEMENT DATE AND THE ASSIGNEE HAS NOT BEGUN SUBSTANTIAL WORK ON THE PROPERTY. HOWEVER, YOU ARE OBLIGATED FOR PAYMENT OF ANY CONTRACTED WORK PERFORMED BEFORE THE AGREEMENT IS RESCINDED. THIS AGREEMENT DOES NOT CHANGE YOUR OBLIGATION TO PERFORM THE DUTIES REQUIRED UNDER YOUR PROPERTY INSURANCE POLICY.**

APPENDIX 2



**Safe Point**

Policy # ██████████

Claim # ████

Invoice: ████████

Notes:

**Invoice Date:**
**December 29, 2021**

---

**Address Information**

**Account Name:** Jose Linares
Account Address:
████████████

North Lauderdale FL 33068

---

**Products**

| Product | Long Description | Quantity | Total Price |
|---|---|---|---|
| Engineering Report | Engineer Report from State Licensed Professional Engineer | 1.00 | $3,000.00 |
| | | | **Total:** $3,000.00 |

---

**Terms and Conditions**

Payment Terms: Due within 30 days of receipt. If payment is not received within 30 days of the date of the invoice, a late charge of 1.5% per month, or a $25 flat fee (whichever is greater), will be added to any unpaid portion of the invoice every 30 days.

---

*Copyright Air Quality Assesors.*